## CRENSHAW v. WILKES.

Where A, the secretary of a mining corporation, who is largely indebted to it upon a stock subscription, agrees with B, its president, that he will buy certain machinery needed by the company and sell it to the company for the price he pays for it as a credit on his indebtedness, and A negotiates with a manufacturer for the purchase of the machinery, informing the manufacturer of his arrangement and agreement to sell it to the mining corporation, and the machinery is selected by A and inspected and approved by B, and the terms of sale are that A is to pay one third cash and give his notes for the balance, and the manufacturer at the instance and request of A ships the machinery to the mining company, which pays the freight and installs the machinery at considerable cost, and which immediately cancels so much of A's indebtedness as is represented by the price of the machinery, the title of the mining corporation is superior to a conditional bill of sale signed by A, in which the manufacturer reserves the title to the property until the deferred payments are met, and of which neither the mining company nor its president has notice prior to the time of consummation of the sale. The subsequent record of the bill of sale within the statutory time would not change the rights of the parties.

JUNE 25, 1910.

Trover. Before Judge Morris. Cherokee superior court. August 5, 1909.

Jane E. Wilkes, doing business as the Mecklenburg Iron Works, at Charlotte, North Carolina, brought suit to recover of Thomas C. Crenshaw certain machinery in his possession. The case was submitted to the court on an agreed statement of facts, so much of which as is material being as follows: Fred Keener bought from the plaintiff certain machinery. Keener was secretary and treasurer of the Mary Lee Gold Mining Company, a corporation doing business in Georgia. Keener owed the mining company a large amount on stock subscription, and, in settlement of a portion of it, agreed with the mining company to purchase certain machinery needed in the operation of its mine and resell same to the mining company. Keener informed the plaintiff of his and the mining company's agreement, pursuant to which Crenshaw, as president of the mining company and representing it, went to the place of business of the plaintiff at Charlotte, North Carolina, in February, 1905, to inspect the machinery proposed to be purchased by Keener, to ascertain if it was such machinery as the mining company would accept. Keener had arranged with the plaintiff that if Crenshaw agreed that the company would buy the machinery

from him (Keener), the plaintiff would ship the machinery directly to the mining company in Georgia. Crenshaw informed the plaintiff that the company would accept the property from Keener, and so notified Keener; and of this latter fact the plaintiff had knowledge. Keener was to pay one third cash for the machinery and to give his obligation for the balance; and Crenshaw knew of this. After Crenshaw's departure from Charlotte the deal was closed between Keener and the plaintiff, and in accordance with the agreement the plaintiff shipped the machinery to the mining company, the latter paying the freight. All the parties had knowledge that Keener was to purchase from the plaintiff the machinery on his own responsibility, resell it to the mining company, and be paid therefor by credit on the books of the mining company on stock subscription which he had taken in the mining company. The sale was consummated between Keener and the plaintiff on February 24, 1905, at which time one third of the purchase-price was paid in cash, and Keener executed to the plaintiff a conditional bill of sale to the machinery, wherein title was reserved in the plaintiff until the deferred payments were made. Crenshaw had no knowledge that the plaintiff was to retain title to the machinery, nor did the plaintiff give him any notice that she intended to require a bill of sale from Keener, reserving title to the property. The machinery was received by the mining company the latter part of March, 1905, and installed at considerable cost; and credit was immediately given to Keener on the books of the company for $2,052, the purchase-price of the machinery. The conditional bill of sale, dated February 24, 1905, was attested by two witnesses, one of whom was a notary public. Within thirty days it was recorded in the State of New Jersey, in the county of Keener's residence; and on August 4, 1905, it was recorded in Cherokee county, Georgia, the county of the place of business of the Mary Lee Gold Mining Company. Crenshaw was notified by the plaintiff, sometime in June, 1906, of her claim of title to the property. In March, 1907, a receiver was appointed for the mining company. The property was advertised for sale, and at the sale Crenshaw became the purchaser of the entire property of the mining company, including the property in this suit. Public notice was given, just before the sale, by plaintiff's attorney of her claim of title. The property is in the possession of the de-

fendant, who refuses to deliver it on demand. The court directed a verdict for the plaintiff, and the defendant excepted.

*Anderson, Felder, Rountree & Wilson,* for plaintiff in error.

*Colquilt & Conyers,* contra.

EVANS, P. J. (After stating the foregoing facts.) The Mecklenburg Iron Works sold the machinery to Keener with knowledge that Keener was purchasing it for resale to the mining company. The vendor knew that Keener was to accept, in payment for the machinery, a pro tanto discharge of his indebtedness to the mining company, and shipped the machinery at the request of Keener to the mining company. The vendor, Keener, and the mining company were aware of the various inducements of the parties influencing each one's participation in the transaction. The entire transaction, while not constituting a tripartite agreement, did involve two sales, that is a sale and a resale, so intimately connected and interwoven in negotiation, consideration, and execution that it would be a fraud to inject an element unknown to one of the participants in the transaction, and which would have the effect to impose upon that participant a liability not contemplated nor disclosed in the original transaction, and antagonistic to its general tenor and effect. If the vendor intended to reserve title to the machinery sold to Keener, she should have informed the mining company of such intention. Her consent to sell to Keener with a knowledge that Keener intended an immediate resale to the mining company, and the shipping of the machinery to the mining company on Keener's request, was an assurance to the mining company of Keener's right to convey an unincumbered title. Otherwise it would be allowing the vendor to induce and accomplish the trade upon her apparent assent that Keener had full title to convey, and then allow her and Keener to secretly contract to the contrary. The circumstance that the consideration of the sale from Keener to the mining company was an existing debt does not change the complexion of the transaction. The mining company may have preferred to buy elsewhere, or machinery of a different type or of less value; it did cancel its debt against Keener, paid the freight, and installed the machinery at considerable cost. The case is not that of a creditor who simply takes additional security for an antecedent debt. Relatively to the vendor the mining company was a bona fide purchaser.

A vendor may make either an absolute or conditional sale of his goods. He can not reserve the title and, at the same time, empower his vendee to sell. His authorization of a sale by his vendee is inconsistent with the reservation of title in himself, which forbids a sale. If A buys personalty from B and gives to B a note for its purchase-price, with the stipulation that the title to the personalty shall remain in B until the note is paid, and B authorizes A to sell the personalty and bring him the proceeds, a sale by A to an innocent purchaser conveys a good title, although A may not account to B for the proceeds, and the reservation of title note may have been duly recorded. *Tucker* v. *Mann,* 124 *Ga.* 1003 (53 S. E. 504) ; *Clarke* v. *McNatt,* 132 *Ga.* 610 (64 S. E. 795). The principle decided in these cases is applicable to the case at bar; and we think the court erred in directing a verdict for the plaintiff upon the agreed statement of facts. We will not discuss the question of registration and constructive notice, so ably and elaborately argued in the briefs, because we are of the opinion that, even though the conditional bill of sale was properly executed and recorded in time, under the facts the plaintiff could not legally prevail.　　　　　*Judgment reversed.　All the Justices concur.*