## 75520. FIRST NATIONAL BANK OF COBB COUNTY v. ATLANTA CLASSIC CARS, INC.
(363 SE2d 16)

DEEN, Presiding Judge.

According to the facts stipulated by the parties, CBS Leasing, Inc. (CBS), was a licensed automobile dealer that regularly bought, sold, and leased new and used cars. Its usual method of business involved finding a lease customer for an automobile, and then selling

the vehicle and assigning the lease to a financial institution rather than retaining ownership and receiving the monthly lease payments. In late spring 1981, CBS ordered a new Mercedes from Atlanta Classic Cars, Inc. (ACC), which delivered the vehicle to CBS on July 10, 1981. Although the invoice indicated a cash sale for $45,568, CBS did not pay for the car. Ostensibly to ensure payment, however, ACC retained the manufacturer's statement of origin (MSO).

Prior to the delivery of the vehicle, CBS had made arrangements to lease the car to an individual, and then sell the vehicle and assign the lease to the First National Bank of Cobb County (FNB). This arrangement collapsed when the individual declined to lease the vehicle, and consequently, on July 10, 1981, CBS executed an agreement purporting to lease the vehicle to itself, and then sold the vehicle and assigned the lease to FNB for $47,900, which FNB paid in full. On July 16, 1981, ACC repossessed the vehicle. The next day, FNB learned of CBS's financial straits (which eventually led to CBS's bankruptcy) and ACC's repossession of the vehicle.

FNB subsequently commenced this action against ACC, seeking to recover $47,900 or the vehicle, which had already been resold by ACC. The trial court entered judgment for ACC, after concluding (1) that under the Motor Vehicle Certificate of Title Act (C.T.A.), OCGA § 40-3-1 et seq., title did not pass from ACC to CBS because ACC retained the MSO; (2) that FNB had sufficient reason to know that CBS did not own the vehicle; and (3) that ACC at least had a perfected security interest in the vehicle that had priority over any security interest FNB had in it. FNB brings this appeal, contending that all of the trial court's conclusions were erroneous. *Held*:

1. Initially, we consider the issue of whether, under the U.C.C. or C.T.A., ACC's retention of the MSO prevented title from passing to CBS and later to FNB. OCGA § 40-3-31 (d) does provide in part that "no purchaser or transferee shall acquire any right, title, or interest in and to a vehicle purchased by him unless and until he shall obtain from the transferor the certificate of title thereto, duly transferred in accordance with this Code section." However, in *Owensboro Nat. Bank v. Jenkins*, 173 Ga. App. 775, 778-779 (328 SE2d 399) (1985), notwithstanding such strict language of the above Code section, this court answered in the negative the question, "[C]an it be said that a purchaser of a vehicle on which a certificate of title has not been previously issued holds no title during that often protracted time between the actual purchase and the issuance of title?" See also *Hightower v. Berlin*, 129 Ga. App. 246 (199 SE2d 335) (1973). Accordingly, when ACC sold the vehicle to CBS on July 10, 1981, it may have reserved a purchase money security interest (OCGA § 11-9-107) in the vehicle, but title passed to CBS.

2. FNB also contends that it purchased the vehicle and took an

assignment of a bona fide lease from CBS, rather than merely financing CBS's purchase of the car and taking a security interest, and that as a buyer in the ordinary course of business it took the vehicle free of any security interest created by CBS in favor of ACC. "A 'lease intended as security' is an agreement in which the ultimate intent is a sale. The prime essential distinction between a lease and a conditional sale is that in a lease the lessee never owns the property. 'In the absence of a right or option in the lessee to acquire ownership of the leased property, the transaction is one of lease.' [Cit.]" *Ford v. Rollins Protective Svcs.*, 171 Ga. App. 882, 884 (322 SE2d 62) (1984). Even though the lease agreement in this case shared elements with other "leases" held to have been disguised secured transactions, we conclude that the lease agreement actually was, as declared in the agreement itself, one of leasing only. The estimated residual value of $23,975 guaranteed by the lease at the end of the four-year lease term does not appear to be out of keeping with the market value of such a car, and certainly was not a nominal sum that could be paid by the lessee as a purchase price. The lessee was given no option to purchase, and would not enjoy the full benefit of the actual resale price at the end of the lease, only the liability for any deficiency. Compare *Pierce v. Leasing Intl.*, 142 Ga. App. 371 (235 SE2d 752) (1977). Moreover, it is apparent from the stipulated facts that the intent of FNB and CBS was for CBS to find another party to be the lessee.

OCGA § 11-1-201 (9) defines buyer in ordinary course of business as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . ." OCGA § 11-9-307 (a) provides that "[a] buyer in ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." Reading those two sections together, a buyer who merely knows of a security interest of another party covering certain goods constitutes a buyer in ordinary course of business and takes free of that security interest, whereas a buyer who knows that the sale actually violates some term of the security agreement not waived by the secured party takes subject to that security interest. See the 1972 Official Comment No. 2 to § 9-307 of the Uniform Commercial Code.

In this case, CBS was in the business of selling automobiles and assigning the leases it had obtained on the vehicles to a financial institution; the sale of the vehicles was an integral part of and not merely incidental to its primary business. See *United Car. Bank v. Capital Auto. Co.*, 163 Ga. App. 796 (294 SE2d 661) (1982). Concerning the issue of FNB's knowledge, the documents presented by CBS in its dealings with FNB, i.e., the invoice that indicated a cash sale

between ACC and CBS and a copy of the MSO, would not suggest the existence of a security interest held by ACC, much less demonstrate to FNB a violation of some term of a security agreement between ACC and CBS. Those documents actually were quite consistent with an unencumbered sale between ACC and CBS. Accordingly, FNB was a buyer in ordinary course of business and took the vehicle free of any security interest reserved by ACC, and the trial court erred in entering judgment for ACC rather than FNB.

*Judgment reversed. Birdsong, C. J., and Pope, J., concur.*

DECIDED OCTOBER 20, 1987 —
REHEARING DENIED NOVEMBER 5, 1987 — 

*Hansell L. Smith, David P. Darden,* for appellant.
*John A. Swann, Cyrus Malone,* for appellee.