A90A2322. CLASSIC CADILLAC, L. P. et al. v. WORLD OMNI LEASING, INC.
(404 SE2d 452)

COOPER, Judge.

This appeal arises from two separate but virtually identical actions brought by appellee, World Omni Leasing, Inc. ("World") against appellants, Classic Cadillac and Potamkin Subaru d/b/a Classic Subaru (hereinafter both referred to as "Classic"). Classic appeals from the grant of summary judgment to World on the complaint and on the counterclaim filed by Classic and the denial of Classic's cross-motion for partial summary judgment.

Beginning in 1988, Classic established a working relationship with Heritage Auto Leasing, Inc. ("Heritage"), a licensed automobile dealership which derived almost all of its revenue from the sale and assignment of lease agreements and the vehicles subject to those leases. When Classic could not arrange financing for one of its customers, Classic would send the customer to Heritage and Heritage would attempt to arrange the financing. If Heritage were able to arrange financing, the typical arrangement between Classic and Heritage involved Classic's delivery of a car to Heritage for seven days with the mutual understanding that during the seven-day period Heritage would enter into the lease agreement with the customer, deliver the car to the customer, and sell the car and lease agreement to the company financing the transaction, oftentimes World. Heritage and World did business pursuant to a World "Dealer Agreement," whereby World appointed Heritage as a "dealer" for the purpose of arranging leasing transactions between World and third parties. Heritage was also responsible for arranging for the cars to be titled in

World's name.

The transactions which resulted in these lawsuits occurred on different occasions, but in essentially the same manner, as follows: Both customers were interested in purchasing cars being sold by Classic. However, Classic was unable to arrange financing for the customers and contacted Heritage to see if Heritage could arrange some alternate type of financing, specifically a lease arrangement. Classic sent Heritage each customers' credit application, which Heritage sent to World to see if World were willing to enter into a lease agreement with the customer. Upon approval by World, lease agreements were entered into between World and the customers. In one case, the lease between World and the customer was executed at Heritage's office and in the other case the lease was executed at Classic; however, both leases were signed on behalf of World by Dwayne Clark, president of Heritage. Both lease agreements provided that World was the lessor. After completing the necessary paperwork, the customers were given possession of the cars. The manufacturers certificates of origin were kept by Classic. The agreement between Classic and Heritage was that Classic would give the customers the cars, and Heritage would give Classic drafts for the amount of the cars which Classic would not present for payment. At the end of seven days, Heritage would give Classic checks for the amount of the cars. Classic knew that during the seven-day period, Heritage would sell the subject vehicles to World in connection with the lease agreements, and to facilitate that transaction, Classic provided Heritage with a copy of the invoices for the cars. World paid Heritage for the cars, but at the end of the seven-day period, Heritage did not pay Classic for the cars. Classic then contacted the respective customers and asked them to return the cars to Classic in exchange for other vehicles. Both customers returned the cars, and World subsequently sued Classic under a theory of conversion. Classic filed a counterclaim against World claiming that Heritage was World's agent, and therefore, World was liable for Heritage's failure to pay for the cars. The parties filed cross-motions for summary judgment, and the trial court denied Classic's motion and granted World's motion, concluding that World took title to the cars free of any security interest held by Classic.

1. Classic contends in its first enumeration of error that World was not entitled to summary judgment on its theory of entrustment. OCGA § 11-2-403 (2) provides: "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." Entrusting is defined as "any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence. . . ." OCGA § 11-2-403 (3). Classic argues that the cars were not entrusted to Heri

tage because they were delivered directly to the customers. We disagree. Although the customers took physical possession of the cars, the delivery of the cars was simultaneous with the execution of the lease agreements. It was not until the cars were leased by Heritage, on behalf of World, that the customers were allowed to take possession of the cars. Therefore, Classic entrusted Heritage with possession of the cars for the purpose of being able to execute the lease agreements, and the inherent risk of not receiving payment from Heritage is one properly borne by the entruster. See *International Harvester Credit Corp. v. Assoc. Fin. Svcs. Co.*, 133 Ga. App. 488 (1) (211 SE2d 430) (1974). Accordingly, we find that since the cars were entrusted to Heritage, a merchant who dealt in goods of that kind, Heritage had the power to transfer all of its rights to a buyer in the ordinary course of business. OCGA § 11-2-403 (2).

2. Classic argues that even if the cars were entrusted to Heritage, the return of the cars to Classic revested titled in Classic. We do not agree. The return of the cars by the lessee was not authorized by World, the buyer in the ordinary course of business. Because World was the entity that obtained certain rights as a result of the entrustment of the cars to Heritage, World was the only entity capable of revesting Classic with its rights to the cars. Inasmuch as World did not take any action to revoke its rights to the cars, Classic was not revested with title when the lessees, acting without the authority of their lessor, returned the cars to Classic. We find that *Walker v. Castello*, 187 Ga. App. 196 (1) (369 SE2d 527) (1988), relied on by Classic, is inapposite.

3. Classic's remaining enumerations of error can be decided by addressing Classic's contention that World was not a buyer in the ordinary course of business and therefore did not take free of Classic's security interest. However, the case sub judice is controlled adversely to Classic by *First Nat. Bank &c. v. Atlanta Classic Cars*, 184 Ga. App. 784 (2) (363 SE2d 16) (1987). The transaction between Classic, Heritage and World involved a sale and resale which were "intimately connected" (*Crenshaw v. Wilkes*, 134 Ga. 684 (68 SE 498) (1910)), as opposed to "two distinctly separate contracts for the sale of automobiles" (*Dan Pilson Auto Center v. DeMarco*, 509 NE2d 159 (Ill. 1987)). If Classic intended to reserve title to the cars sold to Heritage, it should have informed World of that intention. See *Crenshaw v. Wilkes*, supra.

We cannot conclude as Classic argues that World acted in a commercially unreasonable manner by purchasing a car without the title and without having seen the car. World occupied the same position as the bank in *First Nat. Bank &c. v. Atlanta Classic Cars*, supra, and accordingly, was a buyer in the ordinary course of business.

Nor do we find any merit to Classic's argument that World can-

not be a buyer in the ordinary course of business because Heritage was World's agent. World submitted an affidavit which specifically denied the existence of an agency relationship with Heritage for the purpose of Heritage purchasing automobiles from Classic. Although Heritage may have been World's agent for the limited purpose of arranging the lease and reselling the car to World, this does not "authorize a finding that [Heritage] was an agent of [World] for the *original sale* of the automobile, the only relationship which would bind [World], as a principal, to any [action or non-action of Heritage in its purchase of the cars from Classic]." *Ennis v. Atlas Fin. Co.*, 120 Ga. App. 849 (3) (172 SE2d 482) (1969). Classic has pointed to no evidence sufficient to meet World's affidavit denying the agency relationship, therefore no triable issue of fact existed as to an agency relationship. *Chrysler Credit Corp. v. Barnes*, 126 Ga. App. 444 (2) (191 SE2d 121) (1972). Thus, the trial court did not err in finding that World was a buyer in the ordinary course of business and took free of any security interest retained by Classic. Accordingly, summary judgment was properly granted to World.

*Judgment affirmed. Banke, P. J., and Birdsong, P. J., concur.*

DECIDED MARCH 12, 1991.

*Smith, Gambrell & Russell, Stephen M. Forte, Andrea Donef,* for appellants.

*Levine & D'Alessio, Stephen H. Block,* for appellee.