A93A0254. TOMPKINS v. MAYERS et al.
(434 SE2d 798)

BEASLEY, Presiding Judge.

Tompkins sued Jimmy Mayers and Brookie Mayers d/b/a U Store - U Lock, a self-storage facility, to recover for the alleged conversion of her personal property. It was stored in a leased unit and disposed of by defendants after non-payment of rent. Tompkins sought summary judgment, unsuccessfully, on the issue of liability on the ground that the sale scheme in OCGA § 10-4-213 was not followed. Defendants then moved for summary judgment, successfully, contending that the lease agreement authorized sale after 30 days of non-payment of rent; that under the lease agreement they had been appointed by the lessee as his attorney in fact to sell the property

without advertisement at a private sale; and that the lessee received adequate notice in advance.

The evidence favoring appellant Tompkins shows that Hatten, her son-in-law, leased a storage unit from appellees in 1984. The agreement provided in part as follows: "Lessee hereby appoints management as its attorney in fact to sell without advertisement at private sale the goods located in the leased warehouse and sell such goods at any time after the installment of rent has remained unpaid for thirty (30) days after due. Lessee relinquishes all claim to the warehouse contents at this time and assigns title to these contents to the owner of U Store - U Lock."

The lease did not call for the sale procedure set out in OCGA § 10-4-213. Appellant's personal property was placed in the storage unit. Hatten paid rent for the first month but no rent was paid by him for the next 43 months. Jimmy Mayers deposed that he then called the telephone number listed on the lease agreement and informed the person who answered (unidentified) that the property in the unit would be sold unless the rent was paid. The rent was never paid, and the property was sold or given away by the Mayers.

1. Appellant contends the trial court erred in granting summary judgment in favor of appellees on the issue of their failure to comply with the notice provisions of OCGA § 10-4-213 before disposing of her property for non-payment of rent.

In 1982 the legislature enacted the Georgia Self-Service Storage Facility Act, codified as OCGA § 10-4-210 et seq., "to provide a lien on all personal property stored at such facilities in favor of the owners thereof" and "to provide a procedure for the enforcement of such lien." Ga. L. 1982, p. 2286. This creation of an owner's lien gave the owner an additional remedy to what was contained in the contract. The Act expressly so provided: "Nothing in this article shall be construed as in any manner impairing or affecting the right of the parties to create additional rights, duties, and obligations in and by virtue of the rental agreement. The rights provided by this article shall be in addition to all other rights allowed by law to a creditor against his debtor." OCGA § 10-4-214.

If the owner wants the protection of the statutory owner's lien, and the right to enforce such lien, the owner must comply with the statute's specific requirements. OCGA § 10-4-213. Failure to do so deprives the owner of this statutory remedy.

In taking the action which defendants did after over three years of non-payment of rent despite calls for it, they did not attempt to enforce the statutory owner's lien. Instead, they merely enforced the terms of the contract which Jimmy Mayers and Shelton Hatten had signed.

Hatten had agreed that the owner of the warehouse could sell the

goods located in the warehouse if the rent remained unpaid for 30 days. To effectuate such a sale, Hatten expressly, in the contract, both relinquished all claim to the goods and assigned title to the owner. The owner waited over 1,000 days before selling and otherwise disposing of the goods.

Having acted in accordance with the contract and enforced its provisions, and not having depended on the Act for the remedy of an owner's lien, the owner did not violate the Act. Tompkins has no claim for conversion against the owner. Even if she was a disclosed principal and Hatten was her agent, she is foreclosed because her agent agreed to the sale provision in the contract and there is no evidence of a waiver of it by agreement or otherwise.[1]

2. Appellant also contends the trial court erred in granting summary judgment in favor of appellees on the issue of their failure to comply with the notice provisions of OCGA § 11-9-504 before disposing of her property for non-payment of rent, but it is not applicable.

Article 9 of the Uniform Commercial Code does not govern a true lease but only one which disguises a secured transaction. *Mejia v. C & S Bank,* 175 Ga. App. 80 (332 SE2d 170) (1985), dealt with the distinction, with respect to a "motor vehicle lease."

Applying the definition of "security interest" and attributes described in OCGA § 11-1-201 (37), the contract between the parties for the use of space to store personal property in exchange for a fee was a true lease. It did not bear the indicia of a UCC security interest in the lessor but merely created and designated a resource for possible recoupment of unpaid rent.

OCGA § 11-1-201 (37) provides in relevant part that a "'[s]ecurity interest' means an interest in personal property . . . which secures payment or performance of an obligation. . . . Unless a consignment is intended as security, reservation of title thereunder is not a 'security interest.' . . . Whether a transaction creates a lease or security interest is determined by the facts of each case. . . ." See and compare *Guthrie v. Pilgrim Realty Co.,* 156 Ga. App. 692 (275 SE2d 686) (1980) in which the court impliedly found or at least assumed that the "lease" in question was actually a security agreement.

In deciding whether a lease is a security agreement, " '[t]he determining factor to be considered is the intention of the parties at the time the contract was entered into as construed in the light of facts and circumstances as they existed at that time[.] . . .' [Cits.]" *Citi-*

---

[1] Although its presence does not alter the outcome, we note that Tompkins' deposition, which she referred to in her original brief, was not in the record at the time of initial determination of the appeal. Apparently, the clerk of the trial court inadvertently failed to send it. The clerk of this court received the deposition on July 28, 1993 and it has been reviewed on reconsideration.

*zens &c. Leasing v. Atlanta Fed. Savings &c. Assn.*, 144 Ga. App. 800, 805 (3) (243 SE2d 243) (1978). Where the "parties' agreement [is] a lease agreement and not intended to evince a secured transaction, the lease provisions govern[ ] the rights of the parties." *Third Century v. Morgan*, 187 Ga. App. 718, 721 (2) (371 SE2d 262) (1988).

Under OCGA § 11-1-201 (37), the fact that title was assigned by the lease if a future event occurred is not dispositive on the issue of whether a security agreement was intended. Nor is the fact that the parties may argue after the fact that a security interest was intended. " 'A "lease intended as security" is an agreement in which the ultimate intent is a sale.' " *First Nat. Bank of Cobb County v. Atlanta Classic Cars*, 184 Ga. App. 784, 786 (363 SE2d 16) (1987).

Here, neither party intended for lessee to purchase what was leased, i.e., the storage space. The owner/lessor never parted with anything other than its use. No security interest was created in the property leased. Of course, neither did the owner/lessor intend to purchase the items stored in the facility rented to the lessee. Nor did the lessee intend a sale. As plaintiff points out, the lease does not mention the creation of a security interest.

Instead, the provision allowing the owner/lessor to dispose of the lessee's goods after failure to pay for 30 days enabled the owner/lessor to clear out the storage space and rent it to someone else. The lease states that if the lessee is "30 days delinquent in the monthly rent payment, lessee gives [lessor] the right to . . . take possession of the Warehouse and rent same." Lessee's intent at the time of entering into the agreement was not to forfeit the goods in the facility, but to eventually retrieve them. In sum, the intent of the agreement was not for a sale of goods to take place under the guise of a lease contract.

In the usual situation in which a security interest is disguised as a lease, the lessor and lessee contemplate that the lessee will buy the "leased" item by paying monthly payments and exercising an "option to buy" for a nominal price. See *Walton v. Howard*, 198 Ga. App. 804, 805 (1) (403 SE2d 90) (1991). Here, the owner/lessor was attempting to ensure payment under the lease or alternatively the opportunity to relet the premises, by obtaining on default title to the goods so as to recoup unpaid rent and to relet the unit. There is no evidence that the parties intended that a security interest be created by the lease in the goods which lessor did not own. The lessor did not even know what goods, if any, the lessee would or did place in storage until long after the default. Lessee was not required to store anything in the facility and thus, there could be no reliance by the owner/lessor of the space on any goods in the warehouse to provide "security." Instead, the intention of the parties as evidenced in the lease was simply to provide the owner/lessor with a method of clearing out the rental space after a specified period of non-payment by the lessee. It was a

true lease and not subject to Article 9.

The trial court was correct and should be affirmed.

*Judgment affirmed. Pope, C. J., Birdsong, P. J., Andrews and Smith, JJ., concur. McMurray, P. J., and Cooper, J., dissent. Johnson and Blackburn, JJ., not participating.*

COOPER, Judge, dissenting.

I respectfully dissent because the majority views the Georgia Self-Service Storage Facility Act as merely providing an "additional remedy" to owners of self-storage rental facilities when they attempt to dispose of personal property without judicial intervention. However, where the Act is applicable, its provisions are not optional. OCGA § 10-4-215 expressly provides that agreements entered into after July 1, 1982 and those agreements entered into before July 1, 1982 which have been extended or modified after that date are subject to the requirements of the Act. The rental agreement at issue in this case was executed on March 11, 1984 and therefore had to comply with OCGA § 10-4-213 before the Mayers were authorized to dispose of the property without judicial intervention. The rental agreement at issue did not contain the mandatory language set forth in OCGA § 10-4-213 and consequently did not create a lien upon the property which could be enforced without judicial intervention. Moreover, Shelton Hatten was not provided written notice of default, and the property was not advertised and sold in conformity with the statute. In my view, this blatant violation of the Act cannot be ignored. Accordingly, the trial court erred in enforcing the rental agreement and granting summary judgment to appellees.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED JULY 16, 1993 —
RECONSIDERATION DENIED JULY 30, 1993 — 

*Huey W. Spearman, Phyllis J. Holmen, Lisa J. Krisher*, for appellant.

*Emmett P. Johnson*, for appellees.