509 S.E.2d 21

**Donna Llyn DRAKE, Plaintiff Below, Appellant,**

v.

**WEST VIRGINIA SELF–STORAGE, INC., a Corporation Doing Business in West Virginia, Defendant Below, Appellee.**

**No. 25064.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1998.

Decided Oct. 16, 1998.

Concurring Opinion of Justice Starcher Nov. 9, 1998.

Starcher, J., issued concurring opinion.

Jerome R. Novobilski, Clay, West Virginia, Attorney for the Appellant.

Richard Brumbaugh, Spencer, West Virginia, Attorney for the Appellee.

PER CURIAM:

Donna Llyn Drake, plaintiff/appellant (hereinafter "Ms. Drake"), appeals an adverse summary judgment order granted by the Circuit Court of Roane County. The circuit court granted summary judgment to West Virginia Self–Storage, Inc., defendant/appellee (hereinafter "Self–Storage, Inc."), after finding that a storage lease entered into between the parties was not unconscionable. Ms. Drake challenges the circuit court's finding that the storage lease was valid and not unconscionable. Following a review of the parties' arguments, the record below and the pertinent authorities, we affirm the decision of the Circuit Court of Roane County.

## I.

### FACTUAL BACKGROUND

On September 26, 1996, Ms. Drake entered into a storage lease agreement with Self–Storage, Inc. The agreement required Ms. Drake to pay Self–Storage, Inc., $40 per month for storing her household items and other personal property. The relevant

clause in the storage agreement pertaining to the failure to comply with the terms of the lease provided:

17. *OWNER'S REMEDIES UPON DEFAULT.* In case of any default by Tenant, Owner may, at its option, elect any or all of the following remedies:

\* \* \*

(c) Terminate this agreement, and upon such termination, Owner may reenter Tenant's space and seize and take possession of all property in the space to satisfy all accrued rentals, late payment fees, lockout charges, damages and all other costs and expenses owed Owner by Tenant as a result of any breach by Tenant of any covenants, conditions, rules and regulations, or other terms of this lease. Upon such termination and seizure of Tenant's property, Owner may retain property as its sole property, free of the claims of Tenant or others, to satisfy all sums owed Owner. Alternatively, Owner may sell Tenant's property. If such property or any part thereof shall be sold by Owner, said sale may be made without notice to Tenant and may be either public or private sale; Owner may receive and retain the proceeds of such sale and may apply the proceeds of such sale at its option against the expenses of reentry and sale, the costs of moving and storing Tenant's or others' property, any arrearages of rent or other charges, any cleaning or trash removal charges, and any other damages to which Owner may be entitled hereunder or pursuant to law. Any excess remaining after the payment of all such charges may be retained by Owner unless Tenant shall claim such excess within ten (10) days of sale. Owner shall in no event be obligated to advise Tenant of such sale, the date or method of sale, or any excess monies resulting from such sale.

Ms. Drake failed to pay the monthly rental fee for December 1996 and January 1997. Self–Storage, Inc., mailed to Ms. Drake a notice, certified with return receipt requested, indicating that if the arrearages were not paid by February 7, 1997, Self–Storage, Inc., would exercise its right under the storage agreement to sell Ms. Drake's property to satisfy the past due payments. Ms. Drake received the notice. However, Self–Storage, Inc., failed to receive any communication or payment from Ms. Drake.

On May 2, 1997, Ms. Drake forwarded to Self–Storage, Inc., a check in the amount of $180.00 for accrued past due rental payments. Self–Storage, Inc., returned the check with a letter advising Ms. Drake that her property had been sold pursuant to ¶ 17, § (c) of the storage agreement.[1] Thereafter, Ms. Drake filed this action seeking recovery of her property or its monetary value. After a period of discovery, the trial court granted Self–Storage, Inc.'s, summary judgment motion finding that Self–Storage, Inc., complied with the terms of the storage agreement.

## II.

### STANDARD OF REVIEW

■ We have held that "[a] circuit court's entry of summary judgment is reviewed de novo." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). This Court stated in syllabus point 5 of *Wilkinson v. Searls*, 155 W.Va. 475, 184 S.E.2d 735 (1971), that

[a] motion for a summary judgment should be granted if the pleadings, exhibits and discovery depositions upon which the motion is submitted for decision disclose that the case involves no genuine issue as to any material fact and that the party who made the motion is entitled to a judgment as a matter of law.

## III.

### DISCUSSION

The dispositive issue in this case is whether the trial court correctly ruled that the default clause in the storage agreement was not unconscionable. Two questions have

---

1. Ms. Drake's household items and other personal property were sold for $75. The purported sale was actually an exchange of Ms. Drake's property for a trailer valued at $150. Ms. Drake contended that her property was worth $10,000. Self–Storage, Inc.'s brief indicates that Ms. Drake was able to repurchase approximately 75% of her property for $250.

been presented by Ms. Drake regarding the trial court's ruling. First, whether ¶ 17, § (c) of the storage agreement is facially unconscionable. Second, whether a mandatory notice of sale provision should have been incorporated in the storage agreement.

### A. The Doctrine of Unconscionability

As an initial step in our analysis, we must examine the principles developed by this Court concerning the doctrine of unconscionability. This Court has held that "[u]nconscionability means overall and gross imbalance, one-sidedness or lop-sidedness that justifies a court's refusal to enforce a contract as written." *McGinnis v. Cayton*, 173 W.Va. 102, 113, 312 S.E.2d 765, 776 (1984). Unconscionability may be divided into two categories: procedural and substantive. Procedural unconscionability is concerned with the inequities and unfairness in the bargaining process. Substantive unconscionability is involved with determining unfairness in the contract itself. *Id.*, 173 W.Va. at 114, 312 S.E.2d at 777.

We have held that "[u]nconscionability is an equitable principle, and the determination of whether a contract or a provision therein is unconscionable should be made by the court." Syl. pt. 1, *Troy Min. Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 346 S.E.2d 749 (1986). In *Ashland Oil, Inc. v. Donahue*, 159 W.Va. 463, 474, 223 S.E.2d 433, 440 (1976), this Court held that "[i]n most commercial transactions it may be assumed that there is some inequality of bargaining power, and this Court cannot undertake to write a special rule of such general application as to remove bargaining advantages or disadvantages in the commercial area, nor do we think it necessary that we undertake to do so." *See also Barn–Chestnut, Inc. v. CFM Development Corp.*, 193 W.Va. 565, 570, 457 S.E.2d 502, 507 (1995). Undertaking "[a]n analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." Syl. pt. 3, *Troy*. We said in syllabus point 4 of *Art's Flower Shop, Inc. v. Chesapeake and Potomac Telephone Co. of West Virginia, Inc.*, 186 W.Va. 613, 413

S.E.2d 670 (1991), that "[a] determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the contract.'" *See* Syl. pt. 2, *Orlando v. Finance One of West Virginia, Inc.*, 179 W.Va. 447, 369 S.E.2d 882 (1988) ("[T]he particular facts involved in each case are of utmost importance since certain conduct, contracts or contractual provisions may be unconscionable in some situations but not in others.") It is with these principles of law that we analyze the facts of the instant case.

### B. ¶ 17, § (c) of the Storage Agreement Contained a Notice Provision and Therefore it Is Not Facially Unconscionable

Ms. Drake argues that ¶ 17, § (c) of the storage agreement is facially unconscionable. Ms. Drake argues that ¶ 17, § (c) is unconscionable because it does not specifically mandate notice of sale. Relying on notice provisions in statutes pertaining to landlord and tenants and the Uniform Commercial Code (UCC), Ms. Drake cites these statutes as examples of the type of notice that should have been incorporated in the storage agreement. Her argument fails, however, because the parties entered a contract which specifically explained "notice" issues in these precise circumstances. "If language in a contract is found to be plain and unambiguous, such language should be applied according to such meaning." *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont*, 196 W.Va. 97, 101, 468 S.E.2d 712, 716 (1996). Her argument also fails for several other reasons. First, the storage agreement states that "notice may be given" at the option of Self–Storage, Inc., thereby indicating that such notification was optional and not mandatorily required. "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syl. pt. 3, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962). Second,

Ms. Drake was actually given notice, by certified mail with return receipt requested. The notice clearly stated that should Ms. Drake not pay the arrearage by a specific date her property would be sold to satisfy the debt. Third, the discretionary notice provided in ¶ 17, § (c) is not in conflict with the statutes applicable to storage agreements[2] as Self-Storage, Inc., is not engaged in the type of storage business which is regulated by the state. *See, e.g.,* W.Va.Code § 46-7-210 (1993) (enforcement of warehouseman's lien).

■ In addition, the legislature has enacted a series of statutes involving miscellaneous liens that apply to the facts of this case. West Virginia Code § 38-11-3 (1997) states in relevant part:

A person who, while in possession thereof, ... stores ... an article of personal property ... shall have a lien upon such article ... while lawfully in the possession

thereof, for the charges agreed upon ... to the extent and in the manner provided for in [W.Va.Code § 38-11-14], and may retain possession thereof until such charges are paid. ·Such lien shall be good against the person who deposited the property with the lienor. ... If two or more articles of personal property are ... stored ... under one contract or agreement, any one or more of such articles ... may be held under the lien ... for all of the charges upon all such articles included in such contract or agreement.

We have previously observed that "[t]his statutory lien covers a variety of situations where personal property is worked on or stored by a third party." *Bank of White Sulphur Springs v. Patriot Ford, Lincoln–Mercury, Inc.,* 191 W.Va. 339, 341, 445 S.E.2d 522, 524 (1994). The manner of enforcing the lien created in W.Va.Code § 38-11-3 is provided in W.Va.Code § 38-11-14 (1997).[3] This statute provides a specific

---

2. We hasten to point out that our analysis and conclusion in this case may have been different if notice, in fact, had not been given to Ms. Drake.

3. W.Va.Code § 38-11-14 states in full:
Any person holding personal property in his possession under a lien or pledge may satisfy such lien in any manner agreed upon between the owner and the lienor or, if there be no such agreement, in the following manner:
The lienor or pledgee shall give a written notice to the person on whose account the goods are held and to any other person known by the lienor to claim an interest in the goods. Such notice shall be given by delivery in person or by registered letter addressed to the last-known place of business or abode of the person to be notified. The notice shall contain:
(a) An itemized statement of the lienor's or pledgee's claim, showing the sum due at the time of the notice and the date or dates when it became due;
(b) A brief description of the goods against which the lien or pledge exists;
(c) A demand that the amount of the claim as stated in the notice, and of such further claim as shall accrue, shall be paid on or before a day mentioned, not less than seven days from the delivery of the notice. If delivery of notice is made by mail instead of personal delivery, such delivery shall be by registered or certified mail, return receipt requested, and such delivery shall be complete when such notice is deposited in the United States mail, postage prepaid, addressed to the debtor at his last-known address; and

(d) A statement that unless the claim is paid within the time specified the goods will remain in the possession and control of the lienor or pledgee and he will assert in a court of competent jurisdiction his legal right to hold and sell the property for the amount of the debt and to otherwise proceed for payment of the debt.
If the debt has not been fully satisfied by the day following the date specified for payment in the notice hereinabove provided for, the lienor or pledgee shall either release the property to its owner or other appropriate custodian or continue to retain the property and sue upon the debt and the right of possession in a court of competent jurisdiction. Any such suit shall proceed expeditiously toward judgment in manner and form prescribed by law for other civil actions. Unless a suit to enforce any lien authorized by this article be brought in a court of competent jurisdiction within thirty days after the delivery of the notice hereinabove provided for, such lien shall be discharged.
At any time before judgment in any such suit, any person claiming a right of property or possession in the property at issue may pay the lienor or pledgee the amount necessary to satisfy his lien or pledge and the reasonable expenses and liabilities, including all court costs, incurred in protecting and proceeding upon the lien or pledge up to the time of such payment or such person may execute a bond with good security, conditioned to pay the lienor who may be damaged by the release of property under the lien, to be approved by the court, in a penalty not to exceed the lesser of the amount of the lien with reasonable court costs thereupon or the value of the property in

procedure for the enforcement of a lien. However, the statute alternatively provides that "[a]ny person holding personal property in his possession under a lien ... may satisfy such lien in any manner agreed upon between the owner and the lienor." West Virginia Code § 38–11–14, thus allows contracting parties to determine the manner of enforcing any lien resulting from their business relationship. *See Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 21, 217 S.E.2d 907, 911 (1975).

Ms. Drake's failure to pay storage charges in December of 1996 and January of 1997 resulted in the creation of a lien against her property by operation of W.Va.Code § 38–11–3, as well as by the terms of the storage lease agreement itself. Under W.Va.Code § 38–11–14, the parties were free to determine the manner for satisfying the lien. The parties did so by inserting ¶ 17, § (c) into the storage agreement. Self–Storage, Inc., followed the terms of ¶ 17, § (c) in satisfying the lien created in Ms. Drake's property as a result of Ms. Drake's default in rent payments.

Facts similar to this case were addressed in *Tompkins v. Mayers*, 209 Ga.App. 809, 434 S.E.2d 798 (Ga.App.1993). In *Mayers*, the plaintiff stored personal property with the defendants. The contract between the parties allowed the defendants to dispose of the plaintiff's property if the plaintiff defaulted in rent payments. The plaintiff defaulted and the defendants sold the property according to the terms of the storage contract. The plaintiff challenged the sale of the property by arguing that the defendants failed to comply with the procedure of a specific lien statute[4] or, alternatively, the procedures set forth in Georgia's UCC. The trial court granted summary judgment to the defendants. The appellate court, which affirmed the trial court's decision, found that the UCC was inapplicable to agreements for storing

personal property. The *Mayers* court further ruled that the specific lien statute allowed the parties to use any method agreed upon for satisfying a lien. Likewise, in the instant proceeding, the manner in which Self–Storage, Inc., disposed of Ms. Drake's property was consistent with that which is permitted by W.Va.Code § 38–11–14. Based upon the foregoing authorities, we find that the agreement is not facially unconscionable.

### C. The Governing Statute Sets no Guidelines for Determining the Value of Property Sold Pursuant to a Storage Agreement

■ Ms. Drake also contends that the storage agreement is facially unconscionable because it allowed Self–Storage, Inc., to sell her property for less than its true value. We hasten to point out that W.Va.Code § 38–11–14 specifically provides that in disputes involving enforcement of a storage lien the parties "may satisfy such lien in any manner agreed upon[.]" Ms. Drake alleges that her property was worth $10,000. Self–Storage, Inc., traded her property for a trailer valued at approximately $150.00. Self–Storage, Inc., challenges the value placed on the property by Ms. Drake and further contends that Ms. Drake has repurchased 75% of her property for $250.00.[5] The circuit court's order does not specifically reference the value of the property. However, the circuit court was satisfied that the procedural aspects of ¶ 17, § (c) were not unconscionable.

Ms. Drake's argument is similar to the argument proposed to the Court in *Fayette County Nat. Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997). In that case, real property was appraised at a total market value of $94,000. The property was sold at a trustee sale for $26,500. The property owners sought to challenge the sale price as being, in effect, unconscionable. In *Lilly*,

---

the possession of the lienor. The lienor or pledgee shall deliver the goods to the person making such payment or posting such bond, if he is a person entitled to the possession of the goods or payment of charges thereon. Otherwise the lienor or pledgee shall retain possession of the goods according to the terms of the original contract of deposit and shall proceed upon the suit.

4. Ga.Ann.Code 10–4–214 contains a lien enforcement procedure similar to the process outlined in W.Va.Code § 38–11–4.

5. During oral argument counsel for Ms. Drake disputed the percentage of her property which was actually recovered.

this Court rejected the property owners' argument specifically on the grounds that the legislature had established a scheme for controlling trustee sales and found in *Lilly*, those procedures had been followed. We recognized in *Lilly* that the result to the property owners was harsh. However, we found that it is the legislature's responsibility to modify statutory procedures. In the instant case, the legislature has permitted the parties, pursuant to W.Va.Code § 38–11–14 to create their own lien enforcement agreements. As in *Lilly*, the result to the property owner is harsh. However, Self–Storage, Inc., acted within the parameters established by statute and followed the very terms which were clearly articulated in the lease. As such, we find no error.

## IV.

## CONCLUSION

In view of the foregoing, we affirm the circuit court's order granting summary judgment to Self–Storage, Inc.

Affirmed.

STARCHER, Justice, concurring:

(Filed Nov. 9, 1998)

I concur in the result reached by the majority opinion, upholding the circuit court's grant of summary judgment for West Virginia Self–Storage, Inc.

I write separately to point out that while the storage contract in question facially permitted the disposal or sale of Ms. Drake's property—*with or without* prior notice to her—in fact, West Virginia Self–Storage, acting in a commendable fashion, did give Ms. Drake ample and timely notice of the intended disposal or sale of her goods.

Because Ms. Drake completely slept on her rights and ignored the notice and warning she received, she now has no grounds to complain of the sale of her goods.

However, this Court's *per curiam* ruling in the instant case in no way decides the issue of whether a disposal or sale of stored goods can be actionable—under any one of a number of theories of law—when a storage business *does not* at least make a good faith attempt to notify a consumer who is in default on a storage contract of the intended disposal or sale of the consumer's goods.

Therefore, it would be wise for anyone giving legal advice to a self-storage business to *always attempt to give ample and timely notice before disposing of or selling stored goods.*

Otherwise, a creative lawyer, who is consulting with a consumer whose goods are disposed of or sold by a storage business that has not even shown the common courtesy of *trying* to give notice of the disposal or sale, should have little trouble finding theories and grounds to bring a viable lawsuit against the storage business. And such a lawsuit would (entirely unnecessarily) eat up a lot of the storage business's profits.

As the proverb says, "an ounce of prevention is worth a pound of cure."