[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 318 
Timothy A. Burleson ("the father") and Sandra G. Burleson ("the mother") were married on March 18, 2000. One child was born of the parties' marriage. On April 10, 2002, the mother filed a complaint seeking, among other things, a divorce and an award of temporary custody of the child. The trial court entered a pendente lite order on April 11, 2002, and it subsequently amended that order on May 30, 2002, to award the mother the exclusive use of the marital home and to order the father to pay $405 per month for child support. On June 19, 2002, the father answered.
The trial court conducted a final hearing on September 24, 2002, during which it received ore tenus evidence. On that same day, the trial court entered a temporary order awarding the father and the mother joint legal custody of the child, with the mother having physical custody of the child, and setting forth a visitation schedule for the father. The father was ordered to make monthly payments of $391 for child support and $428 towards a child-support arrearage.
On October 9, 2002, the trial court entered a final divorce judgment, in which it incorporated its September 24, 2002, temporary order and in which it also divided the parties' marital property. Pursuant to the divorce judgment, the mother was awarded the marital home, subject to its mortgage indebtedness; a 1991 Lincoln Town Car; and some possessions acquired during the marriage. The father was awarded a 2001 Ford F-350 truck, a 2000 all-terrain vehicle, and a 1995 Dutchman camper. The father and the mother were held responsible for their individual debts and were awarded their respective retirement benefits. The father appeals.
Where a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060
(Ala.Civ.App. 1995). "Th[is] presumption of correctness is based in part on the trial court's unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor." Littleton v.Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App. 1999). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. Somer v. McCoy, 777 So.2d 141 (Ala.Civ.App. 2000).
At the time of the hearing in this matter, the father was 42 years old and the mother was 40 years old; the child was 14 months old. The parties were married for two years. The father had been married three times previously; this was the mother's first marriage. The father had one *Page 319 
child from a previous marriage for whom he paid $325 in monthly child support.
The father works as a police officer for the City of Decatur; he has worked for the City for 21 years. The mother works as a special-education teacher for the Decatur City School System, and she also works part-time as an adjunct professor for Athens State University. The father earns $3,165 in gross income per month. The mother earns $3,950 in gross income per month as a special-education teacher, and $400 in gross income per month as an adjunct professor; the mother's total gross monthly income is $4,350. The father was employed part-time with Russell Security during the parties' marriage, but he quit his part-time employment in March 2002.
The parties owned one piece of real property, the marital home. The parties purchased the marital home shortly after they married for $86,000. The mother testified that a recent appraisal listed the value of the parties' home at $115,000. The parties owed $87,046.20 in outstanding mortgage indebtedness on the marital home; the parties made no down payment towards the purchase price of the home and borrowed $88,000 to purchase the home. The mother testified that, at the time the parties purchased the home, she and the father borrowed $1,000 earnest money from the father's mother. The mother further testified that she reimbursed the father's mother for the earnest money and that the father did not contribute to that payment.
Before purchasing the marital home, the father and the mother lived in a condominium that the mother had owned before the parties married. The mother testified that in July 2000 she sold her condominium and made a $1,750 profit that she then spent towards improvements on the marital home. According to the mother, the home was in need of multiple repairs that she paid for without any financial assistance from the father. The mother testified that she paid $1,098.89 for paint for the interior of the home, in addition to $3,416 for new carpet for the first floor of the home.
The mother testified that she had paid the monthly mortgage payments of $860 since the parties purchased the home. The mother testified that, in addition to the mortgage payment, she paid for approximately 90% of the groceries and for most, if not all, of the child's needs. According to the father, he paid $100 to $150 per month for groceries. The father testified that he was responsible for paying the power bill, the cable bill, and the telephone bill. According to the mother, the power bill averaged $175 per month and the telephone bill averaged $100 per month; the cable bill was consistently $29.95. The father testified that he is responsible for payments on his Ford truck and his all-terrain vehicle; the mother owes nothing on her vehicle.
The mother and the father testified that there were problems in the marriage almost immediately. The father is a recovering alcoholic. The mother testified that she reached her decision to leave the father after an incident in February 2002 when the father arrived home drunk. Following that incident, the father entered a 21-day program at the Bradford treatment center; the father was suspended for 15 days from his employment as a police officer after he returned from treatment. The father testified that he is now an active participant in Alcoholics Anonymous. The father works as a third-shift police officer from 10:30 p.m. to 6:30 a.m.
On appeal, the father contends that the trial court erred by awarding the mother the marital home, thereby awarding the mother 100% of the equity in the home. It is well settled that matters of *Page 320 
property division rest soundly within a trial court's discretion.Albertson v. Albertson, 678 So.2d 118 (Ala.Civ.App. 1996); Welchv. Welch, 636 So.2d 464 (Ala.Civ.App. 1994). In fashioning a property division, a trial court should consider the earning ability of the parties; their ages and health; their station in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the marriage. Robinson v. Robinson,795 So.2d 729 (Ala.Civ.App. 2001). Furthermore, a division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Golden v. Golden, 681 So.2d 605
(Ala.Civ.App. 1996).
Pursuant to the divorce judgment, the mother was awarded the marital home, subject to the indebtedness thereon; the father was not awarded any equity in the marital home. The undisputed evidence presented before the trial court indicates that the parties entered into an $88,000 mortgage on the house; the purchase price of the house was $86,000. According to the mother, she and the father financed the total purchase price of the house and the closing costs. At the time of the hearing in this matter, the outstanding mortgage indebtedness on the property was approximately $87,000. The mother had paid for all of the improvements to the house, including new carpet and paint. In addition to paying for the improvements, the mother repaid the earnest money that the parties had borrowed from the father's mother to purchase the marital home, and she also made all of the mortgage payments; the father only paid the bills for power, cable, and telephone service.
The appraised value of the marital home at the time of trial was $115,000; the parties originally purchased the house for $86,000. The mother testified that she recently had the home appraised while refinancing the home in an effort to lower the monthly mortgage payment. Although the value of the home had clearly increased during the parties' two-year marriage, it is arguable that the trial court attributed that increase in value at least partially to the mother's improvements to the marital home. Testimony revealed that during the course of the parties marriage, the father did not take an interest in improving the marital home but that the mother carried that burden.
The evidence at trial also revealed that the father's alcoholism contributed to the breakdown of the marriage. A trial court may consider the conduct of the parties with respect to the cause of their divorce when dividing their marital property. Mahaffey v. Mahaffey, 806 So.2d 1286
(Ala.Civ.App. 2001). While the trial court's judgment awarding the mother the marital home and not awarding the husband any equity in the home may appear to favor the mother, this court has previously held that a division of property favoring one party over another is not in and of itself an abuse of discretion. Jordan v. Jordan, 547 So.2d 574 (Ala.Civ.App. 1989). Given the short length of the parties' marriage, the conduct of the parties during the marriage, the improvements the mother made to the marital home, and the fact that the mother made all of the mortgage payments, we cannot say that the trial court abused its discretion in awarding the mother the marital home, subject to the mortgage indebtedness. See Golden v. Golden, supra.
The father next argues that the trial court's scheduling of the father's visitation with the child was impractical, impossible to implement, and contrary to the evidence presented at trial. "Visitation . . . is a matter that rests soundly within *Page 321 
the broad discretion of the trial court, and its determination regarding visitation must be affirmed absent a finding that the judgment is not supported by any credible evidence, and that the judgment, therefore, is plainly and palpably wrong." Cohn v. Cohn, 658 So.2d 479, 482
(Ala.Civ.App. 1994).
The judgment of the trial court provided that the father could visit the child at "such reasonable times and places as can be mutually agreed upon by the parties." The judgment went on to provide, in pertinent part, that
 "[i]n the event the parties are unable to agree on visitation, the [father] shall have the right to visit with said minor child and have said child visit with him, during the time he is off from work, with the [father] being entitled to visit when he is scheduled to be off work for three (3) days, commencing at 7:00 a.m. on the day following the first day he is scheduled to be off from work, until 6:00 p.m. on the day he is scheduled to return to work, and when the [father] is scheduled to be off from work for two (2) days, he shall be entitled to visit commencing at 7:00 a.m. on the day following the first day he is scheduled to be off from work, until 6:00 p.m. on the day he is scheduled to return to work. The [father] shall also be entitled to have holiday and special occasion visitation with the said minor child as set out in the Court's standard schedule of visitation . . . attached hereto . . . based on his aforesaid work schedule."
Our review of the father's testimony reveals that the trial court's visitation award substantially follows the father's third-shift work schedule. The father testified that he worked a "seven-day rotating system" during which he worked seven days followed by two, three, or four days off of work during a six-week cycle. The trial court's visitation award clearly accommodates the father's work schedule.
The father asks this court on appeal to reverse the trial court's visitation award so that the trial court can enter a visitation award that will allow the parties to know precisely when visitation is scheduled. The father testified that his work schedule as a third-shift police officer is determined one year in advance. According to the father, that work schedule will not change. Our review of the trial court's visitation award reveals that the trial court based its visitation award on the father's work schedule. Therefore, we cannot say that the trial court abused its discretion in its award of visitation.
The father also contends that the trial court's judgment ordering him to pay $428 per month toward a child-support arrearage was not supported by the evidence, but was based on mere speculation by the trial court. The father avers that the trial court entered it's May 30, 2002, pendente lite order, requiring him to pay $405 per month in child support without any evidence of his monthly income from which to determine a monthly child-support obligation.[1]
The record indicates that after the trial court entered its May 30, 2002, amended pendente lite order, in which the trial court ordered the father to pay $405 each month for child support and to vacate the marital home, the father filed a motion to amend that order. In his motion, the father argued that he was not given notice of the pendente lite hearing and that the trial court abused its discretion in ordering him to vacate the marital home. The father did not raise the issue of the amount of *Page 322 
child support he was ordered to pay pursuant to the amended pendente lite order. The trial court denied the father's motion.
The father now attempts to assert on appeal that the trial court erred by ordering him to pay $405 for child support in its pendente lite order; however, that argument was not raised by the father before the trial court. This court may not consider an issue that is raised for the first time on appeal. Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala. 1992). Therefore, we will not address this issue on appeal, but we note that it is within a trial court's broad discretion to determine a child-support arrearage. Campbell v. Campbell, 827 So.2d 111
(Ala.Civ.App. 2002).
The father next contends that the trial court abused its discretion in failing to comply with Rule 32, Ala.R.Jud.Admin. The father asserts that the record does not contain a CS-42 child-support-guidelines form for the mother.
 "[T]his court has consistently held that the application of Rule 32 is mandatory in child-support actions filed on or after October 9, 1989. A trial court may deviate from the child-support guidelines in determining the child-support amount; however, any deviation is improper if it is not justified in writing. In Martin v. Martin, 637 So.2d 901, 902
(Ala.Civ.App. 1994), this court issued the following directive:
 "'We hold, therefore, that the word "shall" in Rule 32(E), Ala.R.Jud.Admin., mandates the filing of a standardized Child Support Guidelines Form and a Child Support Obligation Income Statement/Affidavit Form.'
 "Compliance with Rule 32(E) is mandatory, even though the trial court may find that the application of the guidelines would be unjust or inequitable. When the court determines that application of the guidelines would be manifestly unjust or inequitable, and then deviates from the guidelines in setting a support obligation, the court must make the findings required by Rule 32(A)(ii), Ala.R.Jud.Admin. When Rule 32(E) has not been complied with and child support is made an issue on appeal, this court may reverse the judgment of the trial court and remand the case for further proceedings in compliance with Rule 32."
Thomas v. Norman, 766 So.2d 857, 859 (Ala.Civ.App. 2000) (some citations omitted; emphasis added).
The record on appeal contains CS-41 child-support income affidavits from both the mother and the father and a CS-42 form for the father; however, it does not contain a CS-42 form for the mother. Rule 32(E), Ala.R.Jud.Admin., mandates the filing of "[a] standardized Child Support Guidelines form . . . in each action to establish or modify child support obligations and [that form] shall be of record and shall be deemed to be incorporated by reference in the court's child support order." See alsoNelson v. Landis, 709 So.2d 1299, 1300 (Ala.Civ.App. 1998).
The trial court ordered the father to pay child support in the amount of $391 per month. The record contains one CS-42 child-support-guidelines form that was filed by the father; however, the recommended child-support obligation in the amount of $317.58 per month on the one CS-42 form submitted to the trial court does not correspond to the amount of child support awarded by the trial court.
The record in this case does not contain all the child-support-guidelines forms required pursuant to Rule 32(E), Ala.R.Jud.Admin., and the trial court's basis for determining the father's child-support obligation is unclear. Moreover, as was the case in Nelson v. Landis, 709 So.2d at 1300-01, *Page 323 
"[t]his court has unsuccessfully attempted, based on the evidence in the record, to determine the manner in which the trial court determined the father's child support obligation." Therefore, this court must reverse the judgment of the trial court regarding the issue of child support and remand this case for the parties to fully comply with Rule 32(E), Ala. R. Jud. Admin, and for the trial court to enter an order in compliance with the child-support guidelines, or, in the alternative, to enter findings justifying a deviation from those guidelines. See Nelson v.Landis, supra.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and PITTMAN and MURDOCK, JJ., concur.
CRAWLEY, J., concurs in the result.
[1] We note that neither the father nor his counsel were present at the hearing on the mother's motion to amend the trial court's previous pendente lite order.