2005 OK CIV APP 40

**Larry GRIFFIN, on behalf of himself and all others similarly situated, Plaintiff/Appellant,**

**v.**

**Billy TEAGUE, Zella Teague, Dennis Teague, Sharon Teague, individually, and Billy Teague, Zella Teague, Dennis Teague, Sharon Teague, d/b/a Hop & Loc Storage, Defendants/Appellees.**

No. 100,894.

Court of Civil Appeals of Oklahoma, Division No. 2.

April 19, 2005.

Certiorari Denied June 6, 2005.

Billy D. Griffin, Jason B. Reynolds, Griffin, Reynolds & Trout, Oklahoma City, OK, for Appellant.

Tracy Pierce Nester, McGivern, Gilliard & Curthoys, Oklahoma City, OK, for Appellees.

Opinion by JOHN F. REIF, Presiding Judge:

¶ 1 This appeal arises from a suit brought by Larry Griffin to recover damages from the owners of Hop & Loc Storage for selling Mr. Griffin's stored property to collect delinquent rent. Mr. Griffin alternatively alleged that the sale constituted conversion, or unjust enrichment, because it was not done in compliance with the Self–Service Storage Facility Lien Act. 42 O.S.2001 §§ 191 through 200. Mr. Griffin sought summary judgment on the issue of liability, contending the timing and content of Hop & Loc's mailed notice of sale and published notices of sale did not comply with the provisions of the Act. He has asserted that the deficiencies in these regards denied him the opportunity to redeem his property provided by the Act. In response, Hop & Loc filed a counter-motion for summary judgment that argued that the Act was not exclusive and, in fact, expressly preserved other rights and contractual remedies to the parties. Hop & Loc offered evidentiary material that showed it sold the property in accordance with the terms of the storage

agreement. The trial court denied Mr. Griffin's motion for summary judgment and granted summary judgment in favor of Hop & Loc. Mr. Griffin appeals.

¶ 2 In reading the Act, it is clear that the legislature provided a lien to owners of self-storage facilities to secure the payment of rent for the storage space, and specified the procedure to foreclose the lien given by the Act. It is equally clear, however, that *owners of self-storage facilities who do not seek the lien protection of the Act have other lien protection* as may be provided by law or by special contract or agreement.

¶ 3 We observe that the legislature expressly provided: "Nothing in this act shall be construed as in any manner impairing or affecting the right of parties to create liens by special contract or agreement, nor shall it in any manner affect or impair other liens arising at common law[,] in equity, or by any statute of this state." 42 O.S.2001 § 199. The legislature also said: "If the requirements of this act are not satisfied, if the sale of the personal property is not in conformity with the notice of sale, or if there is a willful violation of this act, nothing in this section [governing enforcement of the lien,] affects the rights and liabilities of the owner, occupant or any other person." 42 O.S.2001 § 197(N).

¶ 4 Oklahoma has long recognized that the owner-lessor of a self-storage facility has a lien for unpaid rent under 42 O.S.2001 § 91.[1] *Security National Bank and Trust Company of Norman v. Reiginger*, 1980 OK 70, 610 P.2d 1222. The chief difference (aside from enforcement procedure) between the lien under the Self–Service Storage Facility Lien Act and the lien under section 91 is the date of attachment of the lien. Under section 197(B) of the Act, "the lien attaches as of the date the personal property is brought to the self-service storage facility," while the lien under section 91 does not attach until the owner-lessor assumes possession of the stored property upon default.

¶ 5 In the case at hand, the contract between Mr. Griffin and Hop & Loc does not purport to have a lien attach as of the date of delivery of the property to the storage facility and, in fact, is silent on the subject of a lien. The contract states the rental unit and property therein are in the possession of the lessee until a default occurs. It is only upon default that Hop & Loc "take[s] immediate possession of the premises together with all property therein." The contract of the parties clearly evinces an intent that their contract, and any lien rights that may arise thereunder, are outside the ambit of Self–Service Storage Facility Lien Act, a choice reserved to them by the Act.

¶ 6 At the point that Hop & Loc assumed possession of the stored property, however, Hop & Loc became a bailee of the property until Hop & Loc decided to enforce its rights against the property. We make this observation, because title to stored property did not change upon default. (Compare with *Tompkins v. Mayers*, 209 Ga.App. 809, 434 S.E.2d 798, 800 (1993), where the owner "relinquished all claim to the goods and assigned title to the owner [of the storage facility].") Mr. Griffin's title simply became burdened with a lien for further storage of the property.

¶ 7 One point upon which we do agree with Mr. Griffin is that a sale of the property in accordance with terms of the rental contract is not alone sufficient in view of the fact that the rental contract does not assign title or create a lien by "special agreement." Even though Hop & Loc's sale of the stored property does not have to comply with the procedure set forth in § 197 of the Act (because Hop & Loc is not foreclosing the lien given by the Act), Hop & Loc did have to comply with the provisions of section 91 in foreclosing its lien by sale of the property.

¶ 8 Section 91 specifies that a lien arising under its provisions may be foreclosed by a sale of the affected personal property upon a notice that contains (1) the names of the owner or any other party who may claim an interest in the property, (2) a description of the property to be sold, (3) the nature of the service performed and the date thereof, (4) the time and place of sale, and (5) the name

1. Statute in effect at the time the lien arose.

of the party foreclosing the lien. Section 91 also requires the notice to be posted in three public places in the county where the property is to be sold at least ten days before the date of sale specified in the notice. Section 91 further states that a copy of the notice shall be mailed by registered mail to the owner and any other party claiming any interest, at their last known post office address, on the day of the posting of the notice. Finally, Section 91 does not allow proceedings for foreclosure to be commenced until thirty days after the lien has accrued.

¶ 9 The record in the case at hand contains a copy of the notice that Hop & Loc mailed by certified mail return receipt requested on January 17, 2003. The notice was mailed to the last known address for Mr. Griffin but was returned because the forwarding period had expired. The notice contains a bold caption that identifies it as a **"LIEN NOTICE"** and states that it is based on "failure to pay rent [and] default since 3/21/02." The notice further advises that Hop & Loc Storage claims a lien on "personal property pursuant to 42 O.S.A. Section 91" and describes the property by reference to "UNIT # K44." The notice also states "[i]f the claim is not satisfied by 2/1/03, the contents of unit will be sold at public auction as scheduled below." The notice identifies Larry Griffin as the owner of the property. The notice declares that "[t]he nature of the service performed by Hop & Loc Storage is the protection and storage of the above described property" and itemizes the charges due for such service. The notice advises that the sale of the contents of the unit will take place on February 3, 2003, at the address of Hop & Loc Storage. The notice concludes by advising that it "is being posted at the following three (3) public places in this county" and identifies those places.

¶ 10 Measuring the notice of January 17, 2003, against the requirements set forth in section 91, reveals that Mr. Griffin's default occurred, and Hop & Loc's lien accrued, March 21, 2002. This is almost eleven months prior to the notice. Clearly, Hop & Loc waited more than 30 days after the accrual of its lien to commence foreclosure proceedings. The notice also reflects con-temporaneous posting of the notice and a scheduled date of sale of the property (February 3, 2003), more than 10 days after the mailing and posting of the notice. The notice names Mr. Griffin as owner, and identifies the nature of the services (protection and storage) and the period in which they were performed (since March 21, 2002, through the mailing and posting of the notice on January 17, 2003). The notice identified Hop & Loc as the party foreclosing the lien by a sale to take place at its business address.

¶ 11 The only aspect of the notice about which there may be any concern is the "description of the property to be sold." 42 O.S.2001 § 91(A)(2)(b). The notice asserts a lien against "personal property" that is further described by reference to the rented storage unit "K44" and by two references to the contents of the unit. We are mindful that Mr. Griffin has contended that the description of the property in the notice was not sufficient for purposes of the Self–Service Storage Facility Lien Act and that he no doubt considers the description insufficient for purposes of section 91 as well.

¶ 12 In deciding whether the description of the property in the notice is sufficient to support a foreclosure sale of the property, we are reminded that "[o]nce it has been determined that a lien did in fact attach to the property because the claimant is within the protected class, enforcement provisions may be liberally applied." *Riffe Petroleum Co. v. Great National Corp., Inc.,* 1980 OK 112, ¶ 5, 614 P.2d 576, 579. Oregon has a similar rule of liberal construction: "when the claimant's right [to the lien] has been clearly established, the law will be liberally interpreted toward accomplishing the purposes of its enactment." *McGregor Co. v. Heritage,* 291 Or. 420, 631 P.2d 1355, 1356 (citing *Timber Structures v. C.W.S. G. Wks.,* 191 Or. 231, 229 P.2d 623 (1951)). As a corollary to liberal construction, the *McGregor* case recognizes that "a showing of substantial compliance with the requirements of the statute is sufficient." *Id.* at 1357 (citation omitted).

¶ 13 The *McGregor* case cited approvingly, *Beneficial Finance Co. v. Wegmiller Bender Lbr. Co.,* 402 N.E.2d 41, 45 (Ind.Ct.App.

1980), "to define the term 'substantial compliance' as applied in lien cases [and to identify] what elements are of importance in deciding whether there has been 'substantial compliance' in such cases." The *Beneficial Finance* case states "[w]hether there has been substantial compliance by the lien claimant depends upon the degree of non-compliance with the letter of the statute, the policy which underlies the particular statutory provision in question, and the prejudice which may have resulted to either the owner of the property or other third parties who have an interest in the [property]." The *McGregor* case dealt with the question of whether the owner of the property had been sufficiently identified in a lien claim so that third parties would have sufficient notice of the claim. The *McGregor* case liberally construed the concept of description of the owner in finding the description in the lien claim at issue was sufficient.

¶ 14 In *C–3 Builders, Inc. v. Krueger*, 56 Or.App. 502, 642 P.2d 344, 345 (1982), the Oregon Court of Appeals applied the *McGregor* rule of liberal construction/ substantial compliance in deciding "whether the [property] description contained in [the lien claimant's] first lien claim was sufficient to satisfy the [statutory] requirements." The applicable Oregon statute required a description of the property to be charged with the lien sufficient for identification, including the address, if known.

¶ 15 The court in *C–3 Builders* concluded that there was substantial compliance even though "[t]he name of the business, the tax lot number and the address listed in the lien claim were incorrect." *Id.* (C–3 Builders had misidentified the property as Hunter Restaurant Bar rather than Hunter's Steak & Pancake and gave the address as 2600 N.E. 238th instead of 2602 N.E. 238th.)

¶ 16 The court concluded the description was in substantial compliance, despite these deficiencies in the lien notice, because the owner and a mortgage holder "were not misled by the inaccuracies in the property description" and "the lack of prejudice to them." *Id.* at 346.

¶ 17 In the case at hand, Hop & Loc's lien notice identifies the unit rented by Mr. Griffin and informs him that "the contents of unit" will be sold to satisfy the lien claimed by Hop & Loc. It is difficult to conceive how Mr. Griffin could be misled or suffer prejudice from this description of the property to be sold. It is well settled in lien cases that the question of "whether the facts (once established) [including undisputed facts on summary judgment] demonstrate substantial compliance with applicable statutory requirements—is largely a question of law." *K & H Well Service, Inc. v. Tcina, Inc.*, 2002 OK 62, ¶ 9, 51 P.3d 1219, 1223 (footnote omitted). We find the description in the notice to substantially comply with the description requirement of section 91 as a matter of law.

¶ 18 Mr. Griffin left property in a storage unit owned by Hop & Loc for eleven months without paying the agreed rental and changed his address at some point without notifying Hop & Loc. After the property was sold to satisfy his undisputed debt, he complains that Hop & Loc should have exercised more diligence in notifying him, basically contending Hop & Loc should have made a second mailing not required by section 91.

¶ 19 The responsibility to balance the competing interests of the property owner and lien holder, and for declaring their respective burdens, lies with the legislature. As the Oregon Supreme Court has observed: "In enacting [lien] statutes the legislature presumably must consider [and has considered] two opposing interests: (1) the interest of the debtor, including his interest in receiving fair and adequate notice of the lien and of its foreclosure and (2) the interest of the lien holder and of purchasers at foreclosure sales." *Rogue Valley Memorial Hospital v. Salem Insurance Agency, Inc.*, 265 Or. 603, 510 P.2d 845, 851 (1973) (citation omitted). Presumably, the legislature struck such a balance in section 91 by prescribing that a single notice need only be mailed to the "last known address."

¶ 20 Significantly, when the legislature enacted the Self–Service Storage Facility Lien Act in 1998, the legislature not only kept this minimal requirement in 42 O.S.2001 § 197(C), but also defined "last-known address" to mean the "address *provided by the*

*occupant* in the latest rental agreement or the address *provided by the occupant* in a subsequent written notice of a change of address." 42 O.S.2001 § 192(2) (emphasis added). Clearly, the legislature contemplates that the property owner has a burden to ensure the storage facility has a current or serviceable address.

¶ 21 Given the clear indication of legislative intent concerning the property owner's burden to provide an address for purpose of mailing, and the minimal burden of the lien holder to mail notice to the owner's "last known address," this court will not change or enlarge the lien holder's notice burden. "Once minimum due process requirements are met, this court may not legislate service requirements." *Wells Fargo Credit Corp. v. Selby*, 2001 OK CIV APP 78, ¶ 6, 26 P.3d 774, 776–77. "[W]hen the statutory scheme has been strictly adhered, fairness is assured and equity does not need to interfere in the interest or justice." *Id.* at n. 2, 26 P.3d at 776.

¶ 22 A final point to consider is whether the foreclosure procedure of section 91 is constitutionally insufficient, because it does not require actual notice. We hold it is not, because section 91 merely provides a self-help remedy by a creditor in possession of property that is subject to the creditor's lien. In the case of *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), the United States Supreme Court held that the self-help provision of a statute creating a warehouseman's lien does not constitute state action that implicates more than minimum notice protection.

¶ 23 "Where it appears that there is no substantial controversy as to any material fact and that a party is entitled to judgment as a matter of law, summary judgment is properly granted." *Heavner v. Farmers Ins. Co.*, 1983 OK 51, ¶ 12, 663 P.2d 730, 732 (citations omitted). In the case at hand, there is no substantial controversy as to any material fact bearing on Hop & Loc's entitlement to a lien under 42 O.S.2001 § 91, and that Hop & Loc properly foreclosed that lien as provided by § 91. Accordingly, the trial court properly denied summary judgment to Mr. Griffin and properly granted summary

judgment in favor of Hop & Loc *both* on Mr. Griffin's claims *and* on its defense No. 6 that it "had the legal right to the possession of the Plaintiff's property and to dispose of Plaintiff's property." The trial court's judgment is affirmed.

¶ 24 AFFIRMED.

TAYLOR, J., and GOODMAN, J. (sitting by designation), concur.