THOMAS, Judge.
Canyon Development Co., Inc., and Ann Davis appeal from a judgment of the Walker Circuit Court granting a motion for a summary judgment in favor of Holcomb Storage and Steve Holcomb.
The record indicates the following. Holcomb Storage is a self-service storage facility located in Walker County. Canyon Development entered into a written rental agreement (“the rental agreement”) with Holcomb Storage on June 1, 2007, for the use of two storage units. The rental agreement states, in pertinent part:
“In addition to the landlord’s hen as provided by Alabama law, but not in lieu thereof, landlord shall have at all times a valid contractual lien for all rentals or other sums of money becoming due hereunder from tenant upon all items situated in the premises, either now or in the future, and upon default by tenant, landlord may enter upon the demised premises as set out further herein and take possession of any and all items situated on the premises, without liability for trespass or conversion, and sell the same without notice at public or private sale, at which landlord or its assignees may purchase.
[[Image here]]
“... [Ljandlord may give written notice to tenant and begin enforcement action under Alabama law.”
The rental agreement required, among other things, that Canyon Development would pay Holcomb Storage $150 in rent each month.
Canyon Development stopped paying *1098 rent in July or August 2008.[1] In his deposition, Holcomb, the owner of Holcomb Storage, testified that he attempted to personally contact Davis, an owner of Canyon Development, approximately two months after the last rental payment was received but that they were unable to communicate due to poor cellular-telephone service. Holcomb further testified that he sent two letters to Canyon Development by regular mail, one in October 2008 and a second letter sometime thereafter. Holcomb also stated that he had contacted Chuck Presley, a former Canyon Development employee, who had served as a Canyon Development point of contact; however, Presley informed Holcomb that he was no longer employed by Canyon Development.
Sometime in December 2008, Holcomb Storage sold the contents of the storage units for $500. Canyon Development asserts that it became aware of the sale only when a third party notified Canyon Development that its equipment was being used in Florida. Canyon Development and Davis filed a complaint against Holcomb Storage and Holcomb on December 6, 2009, alleging breach of contract, violation of the Alabama Self-Service Storage Act, codified at Ala.Code 1975, §§ 8-15-32 to -38 (“the Act”), negligence, the tort of outrage, and conversion.
Holcomb Storage and Holcomb filed an answer on February 25, 2010. After the parties conducted discovery, including taking the depositions of Davis and Holcomb, Holcomb Storage and Holcomb filed a motion for a summary judgment on May 23, 2011. Canyon Development and Davis filed a response to the motion for a summary judgment on September 30, 2011. The trial court issued an order on December 21, 2011, granting the motion for a summary judgment. Canyon Development and Davis filed a timely appeal with our supreme court on January 27, 2012; that court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
“Appellate review of a summary judgment is de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing ‘that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.’ Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, ‘the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by “substantial evidence.” ’ Lee, 592 So.2d at 1038 (footnote omitted). ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d).”
Perry v. Federal Nat’l Mortg. Ass’n, 100 So.3d 1090, 1094 (Ala.Civ.App.2012).
Canyon Storage and Davis list five issues in the argument section of their brief: (1) Holcomb Storage breached the express terms of the rental agreement, (2) any *1099 ambiguity as to the terms of the rental agreement must be construed against Holcomb Storage, (3) nothing in the Act allows Holcomb Storage to eliminate the duties imposed by the Act, (4) Holcomb Storage breached the duties owed to Canyon Development giving rise to causes of action for negligence and wilfulness/wantonness, and (5) Canyon Development did not consent to Holcomb Storage’s wrongful taking of the property in the storage unit.
Taking the issues out of order, Canyon Development and Davis assert as their second issue that any ambiguity of the terms of the rental agreement must be construed against Holcomb Storage. However, Canyon Development and Davis did not raise the issue of an ambiguity in the rental agreement in the trial court. Therefore, we do not address the issue. See T.J.H. v. S.N.F., 960 So.2d 669, 673 (Ala.Civ.App.2006) (“This court may not consider an issue that is raised for the first time on appeal. Burleson v. Burleson, 875 So.2d 316, 322 (Ala.Civ.App.2003), and Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992). Therefore, we will not further address this issue on appeal.”).
We next address the first and third issues simultaneously. Canyon Development and Davis argue that the language of the rental agreement quoted above required Holcomb Storage to comply with the provisions of the Act in the sale of the property and that, because Holcomb Storage failed to comply with those provisions, it breached the rental agreement. Canyon Development and Davis also seem to argue that the language in the rental agreement — “in addition to the landlord’s liens as provided by Alabama law, but not in lieu thereof, landlord shall have at all times a valid contractual lien” — somehow means that the rental agreement “specifically establishes a lien under the Act.” Therefore, they seem to argue, the rental agreement established a lien solely pursuant to the Act, thus making the requirements of the Act mandatory on Holcomb Storage.
Section 8-15-34 of the Act provides, in pertinent part:
“An owner’s lien as provided for a claim which has become due may be satisfied as follows:
[[Image here]]
“(3) After the occupant has been in default continuously for a period of 30 days, the owner may begin enforcement action if the occupant has been notified in writing. Said notice shall be delivered in person or sent by certified or registered mail to the last known address of the occupant....
[[Image here]]
“(5) The notice required by this section shall include:
. “a. An itemized statement of the owner’s claim showing the sum due at the time of the notice and the date when the sum became due;
“b. A brief and general description of the personal property subject to the lien. Such description shall be reasonably adequate to permit the person notified to identify such property; except that any container including, but not limited to, a trunk, valise, or box that is locked, fastened, sealed, or tied in a manner which deters immediate access to its contents may be described as such without describing its contents;
“c. A notification of denial of access to the personal property, if such denial is permitted under the terms of the rental agreement, which notification shall provide the name, street address, and telephone number of the owner or his designated agent whom *1100 the occupant may contact to respond to such notification;
“d. A demand for payment within a specified time, not less than 15 days after delivery of the notice;
“e. A conspicuous statement that, unless the claim is paid within the time stated in the notice, the personal property will be advertised for sale or other disposition and will be sold or otherwise disposed of at a specified time and place.
[[Image here]]
“(7) After the expiration of the time given in the notice, an advertisement of the sale or other disposition shall be published once a week for two consecutive weeks in a newspaper of general circulation in the county where the self-service storage facility is located. The advertisement shall include:
“a. A brief and general description of the personal property reasonably adequate to permit its identification as provided in paragraph (5)b. of this section; the address of the self-service storage facility and the number, if any, of the space where the personal property is located; and the name of the occupant and his last known address;
“b. The time, place, and manner of the sale or other disposition. The sale or other disposition shall take place not sooner than 15 days after the first publication.
[[Image here]]
“(11) Before any sale or other disposition of personal property pursuant to this section, the occupant may pay the amount necessary to satisfy the lien and the reasonable expenses incurred under this section and thereby redeem the personal property. Upon receipt of such payment, the owner shall return the personal property, and thereafter the owner shall have no liability to any person with respect to such personal property.
[[Image here]]
“(14) If the requirements of this article are not satisfied, if the sale of the personal property is not in conformity with the notice of sale, or if there is a willful violation of this article, nothing in this section affects the rights and liabilities of the owner, occupant, or any other person.”
(Emphasis added.) Canyon Development and Davis specifically argue that Holcomb Storage’s failure to serve notice of the default by certified or registered mail, failure to advertise the sale, failure to provide an opportunity to cure, and failure to make an inventory of the property sold resulted in violation of the Act and in a breach of the rental agreement.
Holcomb Storage and Holcomb argue that the terms of the rental agreement did not require Holcomb Storage to follow the procedures described in the Act for satisfying a self-service storage-facility owner’s lien. Further, Holcomb Storage and Holcomb argue that the terms of the rental agreement created a contractual lien in addition to the statutory lien created by the Act. They assert that the terms and conditions of the rental agreement gave Holcomb Storage the authority to enter the storage unit, to confiscate the property, and to sell the property upon default by Canyon Development without the necessity of complying with the Act.
Neither our supreme court nor this court have addressed whether self-service storage-facility owners such as Holcomb Storage are required to comply with the Act in order to sell the property in a storage facility after the tenant defaults on payment of the storage fee and the rental agreement provides for such a remedy. However, a close reading of the Act provides clarification. Alabama Code 1975, § 8-15-34, provides, in pertinent part, that *1101 “[a]n owner’s lien as provided for a claim which has become due may be satisfied as follows.... ” (Emphasis added.) As this court stated in Ex parte Mobile County Board of School Commissioners, 61 So.3d 292, 294 (Ala.Civ.App.2010):
“[T]he use of the word ‘may’ indicates a discretionary or permissive act, rather than a mandatory act. American Bankers Life Assurance Co. v. Rice Acceptance Co., 739 So.2d 1082, 1084 (Ala.1999). See also Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery, Inc., 873 So.2d 1091, 1098-99 (Ala.2003) (stating that our supreme court has long recognized that the word ‘may’ denotes a permissive alternative rather than a mandatory restriction).”
Additionally, § 8-15-36 of the Act provides that
“[n]othing in this article shall be construed as in any manner impairing or affecting the right of the parties to create additional rights, duties, and obligations in and by virtue of the rental agreement. The rights provided by this article shall be in addition to all other rights allowed by law to a creditor against his debtor.”
Although there is no Alabama caselaw directly on point, decisions of other jurisdictions provide insight into this issue. In Dallas v. S.A.G., Inc., 836 F.2d 1307, 1309 (11th Cir.1988), the Eleventh Circuit Court of Appeals decided the issue whether a landlord possessed a contractual lien as well as a statutory lien provided by Ala. Code 1975, § 35-9-60.[2] Applying Alabama law, the Dallas court concluded .
“that the lease agreement provides [the landlord] with a contractual lien. Section 35-9-60 provided [the landlord] with a statutory lien regardless of whether the lease addressed the issue. The provisions in the lease regarding a lien did not serve to create or protect that statutory lien. Thus, if the provision in the lease did not serve to create a contractual lien, it served no purpose. Just as we frequently observe when interpreting statutes, we do not believe that the words in the lease were intended to have no meaning and to serve no purpose. If the words of the agreement are to be given any meaning, the lease must be read to express the parties’ intention to create a contractual lien. Therefore, according to Alabama law, [the landlord] has a contractual lien on the [tenant’s] property. Because the district court affirmed the bankruptcy court’s conclusion that [the landlord] did not possess a contractual lien, the decision of the district court must be reversed and the matter remanded for further proceedings.”
Id. at 1309.
Similarly, state appellate courts in Oklahoma and Georgia have held that compara *1102 ble self-service storage statutes in those states do not create mandatory statutory-lien requirements that self-service storage-facility owners are compelled to follow. Griffin v. Teague, 115 P.3d 899 (Okla.Civ.App.2005); Tompkins v. Mayers, 209 Ga.App. 809, 434 S.E.2d 798 (1993).
The Oklahoma Self-Service Storage Facility Lien Act provides, in pertinent part:
“A. An owner’s lien as provided for a claim which has become due may be satisfied as provided by this section. The possessory lien authorized by this section shall be prior to any previously perfected security interest in the personal property pursuant to Section 1-9-333 of Title 12A of the Oklahoma Statutes.”
Okla. Stat. tit. 42, § 197 (emphasis added). As in the present case, the outcome of Griffin hinged upon whether the self-service storage-facility owner was required to comply with the statute in the sale of the tenant’s property. 115 P.3d at 900. The Oklahoma. Court of Civil Appeals determined that,
“[i]n reading the [Self-Service Storage Facility Lien] Act, it is clear that the legislature provided a lien to owners of self-storage facilities to secure the payment of rent for the storage space, and specified the procedure to foreclose the lien given by the [Self-Service Storage Facility Lien] Act. It is equally clear, however, that owners of self-storage facilities who do not seek the lien protection of the [Self-Service Storage Facility Lien] Act have other lien protection as may be provided by law or by special contract or agreement.”
Id. at 901. In holding that § 197 of the statute was not mandatory upon the owner, the Griffin court provided further analysis of the Oklahoma statute:
“We observe that the legislature expressly provided: ‘Nothing in this act shall be construed as in any manner impairing or affecting the right of parties to create liens by special contract or agreement, nor shall it in any manner affect or impair other liens arising at common law[,] in equity, or by any statute of this state.’ 42 O.S. 2001 § 199. The legislature also said: ‘If the requirements of this act are not satisfied, if the sale of the personal property is not in conformity with the notice of sale, or if there is a willful violation of this act, nothing in this section [governing enforcement of the lien,] affects the rights and liabilities of the owner, occupant or any other person.’ 42 O.S. 2001 § 197(N).”
Id.[3]
In Tompkins, the occupant of a self-service storage facility also claimed that the owner had unlawfully sold the property stored in the unit to satisfy past-due rents, specifically arguing that the owner had failed to follow the procedure set out in the Georgia Self-Service Storage Act, Ga.Code Ann. § 10-4-213. 209 Ga.App. at 810, 434 S.E.2d at 799. Section 10-4-213 of the Georgia statute provides, in pertinent part, that “[i]f Occupant has been in default continuously for thirty (30) days, Owner may enforce its lien, provided Owner shall comply with the following procedure.” (Emphasis added.) The Georgia Court of Appeals determined that, “[i]f the owner wants the protection of the statutory owner’s lien, and the right to enforce such lien, the owner must comply with the statute’s specific requirements. OCGA § 10-4-213. Failure to do so deprives the owner of this *1103 statutory remedy.” Tompkins, 209 Ga.App. at 810, 434 S.E.2d at 800.
The Tompkins court found that the language of the rental agreement did not require the owner of the self-service storage facility in that case to follow the sale procedure set out in Ga.Code Ann. § 10-4-213. Id. To the contrary, the Tompkins court found that the rental agreement authorized the owner to sell the property stored at the facility if the rent remained unpaid for 30 days and that, by signing the rental agreement, the occupant “both relinquished all claim to the goods and assigned title to the owner.” 209 Ga.App. at 811, 434 S.E.2d at 800. In affirming the judgment of the trial court, the Tompkins court stated, “[h]aving acted in accordance with the contract and enforced its provisions, and not having depended on the [Georgia Self-Service Storage] Act for the remedy of an owner’s lien, the owner did not violate the [Georgia Self-Service Storage] Act.” Id.
Considering the plain language of the Act, parties to a rental agreement for a self-service storage unit possess the authority to create a contractual lien outside the statutory lien created by the Act.[4] Therefore, although the Act provides a self-service storage owner one mechanism for recovering delinquent rent, the Act is not the only avenue of redress available. We agree with Holcomb Storage and Holcomb that the language of the Act permits, but does not require, self-service storage-facility owners to satisfy liens under the Act.
Based on the foregoing, we conclude that Holcomb Storage did not breach the terms of the rental agreement. The language of the rental agreement established a contractual lien that authorized Holcomb Storage to sell Canyon Development’s property upon default by Canyon Development. Holcomb Storage sold the property in accordance with the rental agreement signed by Canyon Development, and, therefore, Holcomb Storage was not required to proceed under the provisions of the Act.
We now address Canyon Development and Davis’s fourth issue, in which they assert that Holcomb Storage breached duties it owed Canyon Development, giving rise to negligence and wilfulness/wantonness claims. Canyon Development and Davis make no argument regarding the wilfulness/wantonness claims in their brief; therefore those claims are waived on appeal. See Crews v. National Boat Owners Ass’n Marine Ins. Agency, Inc., 46 So.3d 933 (Ala.2010). However, Canyon Development and Davis specifically assert that the Act creates a statutory duty that gives rise to a cause of action for statutory negligence or negligence per se. “In order for a cause of action to be based on a statutory violation, the following requirements must be met: ... (3) the defendant must have violated the statute....” Jones v. BP Oil Co., 632 So.2d 435, 441 (Ala.1993). Because we have es *1104 tablished that Holcomb Storage did not violate the Act, we pretermit further discussion of this issue.
Finally, Canyon Development and Davis assert that Canyon Development did not consent to the sale of the property it stored with Holcomb Storage and, therefore, that the sale gave rise to a claim of conversion. We first note that Canyon Development and Davis provide no citation to any legal authority in this section of their brief. See Rule 28(a)(10), Ala. R.App. P. However, as we have previously noted, the rental agreement signed by Canyon Development clearly authorized Holcomb Storage to take possession of and to sell the property stored in the self-service storage facility in the event of a default by Canyon Development.
Based on the foregoing, we affirm the summary judgment because Holcomb Storage acted in accordance with the rental agreement and enforced its provisions without resorting to the Act for the remedy of an owner’s lien.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ, concur.

. Canyon Development asserts that the monthly rental payment was paid by the automatic-bill-pay feature associated with its checking account and that the payments terminated around July or August 2008 unbeknownst to Canyon Development.

. Alabama Code 1975, § 35-9-60, reads:
"The landlord of any storehouse or other building shall have a lien on the goods, furniture, and effects belonging to the tenant, and subtenant, for rent, which shall be superior to all other liens, except those for taxes, and except as otherwise provided in Section 7-9A-333. In case the tenant or subtenant is adjudged a bankrupt, such lien on such goods, furniture, and effects of the bankrupt shall, as against the trustee in bankruptcy, attach only for unpaid rent accrued and which shall accrue within six months from the date of adjudication computed pro rata at the then current rate. The lien amount accrued and to accrue shall not be increased by reason of any default or breach of contract by the bankrupt. From the amount of such lien, so computed, the trustee in bankruptcy may deduct all payments and all demands which could be legally set up against the landlord by way of counterclaim. If the trustee in bankruptcy shall dispose of the lease as an asset of the bankrupt estate, then the landlord shall have a lien on the goods, furniture, and effects of any person holding under the trustee in bankruptcy.”

. The Griffin court did find that a different Oklahoma statute requiring notice was applicable to that case but that the self-service storage-facility owner had complied with the particular requirements of that statute.

. "In interpreting the provisions of an Act ..., a court is required to ascertain the intent of the legislature as expressed and to effectuate that intent. The legislative intent may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained by its passage. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is clear and unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.”
Tuscaloosa Cnty. Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa Cnty., 589 So.2d 687, 689 (Ala.1991) (citations omitted).