445 S.E.2d 522

**BANK OF WHITE SULPHUR SPRINGS, a West Virginia Corporation, and Harold R. Moore, Plaintiffs Below, Appellees,**

**v.**

**PATRIOT FORD, LINCOLN–MERCURY, INC., a West Virginia Corporation, Defendant Below, Appellant.**

No. 21906.

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1994.

Decided June 16, 1994.

**340**

S. Mason Preston, Lewisburg, for appellees.

Robert B. Sayre, Beckley, for appellant.

MILLER, Justice:

This appeal is brought by Patriot Ford, Lincoln–Mercury, Inc. (Patriot Ford), a West Virginia corporation, from a final order of the Circuit Court of Raleigh County which upheld its order granting summary judgment to the Bank of White Sulphur Springs (Bank), a West Virginia banking corporation. We affirm the circuit court's ruling.

### I.

In the proceedings below, each party alleged a superior or prior lien on a 1988 Ford Bronco. The owner of the vehicle, Harold R. Moore, purchased the vehicle on December 2, 1987, and borrowed most of the purchase price from the Bank. The Bank secured its loan with a security agreement on the vehicle and any parts or things added to it. The Bank recorded its lien on the vehicle on the face of the title issued by the West Virginia Department of Motor Vehicles. Subsequently, on May 11, 1990, Mr. Moore consolidated certain debts with the Bank and gave it a second security agreement which continued the Bank's security interest in the vehicle.

Mr. Moore took the vehicle to Patriot Ford on March 12, 1991, for major engine repairs. The bill for the repairs in the amount of $1,431.91, was not paid. Patriot Ford claimed a common law repairman's lien, a statutory improver's lien, and a common law storage lien for its repair and storage of the vehicle. Accordingly, the vehicle was retained in the possession of Patriot Ford to secure its liens.

Upon Mr. Moore's default on the 1990 loan, the Bank sought to collect amounts owed on its 1990 security agreement. In doing so, the Bank demanded that Patriot Ford deliver the vehicle to the Bank pursuant to the provisions of the 1990 security agreement. When Patriot Ford refused to comply, the Bank filed an action in the circuit court.

Patriot Ford relinquished possession after an order was entered on March 25, 1993, by the circuit court which directed it to deliver the vehicle to the Bank. The same order entered judgment for Patriot Ford against Mr. Moore for the $1,431.91 repair bill and $2,100 storage, plus $496.38 interest, for a total amount of $4,028.29. The circuit court recognized the validity of the liens of both parties. The Bank's lien was found to have priority over Patriot Ford's liens.

This case substantially is controlled by *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975), which dealt with a similar set of facts. We recognized in *Fruehauf* that the general priority of liens is addressed in W.Va.Code, 46–9–310 (1963),[1] of the West Virginia Uniform Commercial Code (UCC), which we summarized in Syllabus Point 2:

> "*W.Va.Code* 1931, 46–9–310, as amended, clearly provides that an improver's or repairman's lien in personalty has priority over a prior perfected security interest in the same property when the lien is either based upon a rule of law or based upon a statute which does not expressly subordinate it to other liens."

■ Moreover, we found in *Fruehauf*, after a careful analysis, that the common law repairman's lien has been supplanted by the statutory lien found in W.Va.Code, 38–11–3 (1931),[2] which we termed an "improver's

---

1. W.Va.Code, 46–9–310, provides:
   "When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a per-

fected security interest unless the lien is statutory and the statute expressly provides otherwise."

2. The relevant portion of W.Va.Code, 38–11–3 (1931), is:

lien." This statutory lien covers a variety of situations where personal property is worked on or stored by a third party. This same analysis is applicable to a common law storage lien. We summarized this conclusion in Syllabus Point 4 of *Fruehauf*, but in so doing inadvertently referred to W.Va.Code, 38–14–1, *et seq.*,[3] rather than W.Va.Code, 38–11–1, *et seq.* Throughout the text of *Fruehauf*, all of the references are to various sections of W.Va.Code, 38–11–1, *et seq.* Consequently, we correct the West Virginia Code citation in Syllabus Point 4 of *Fruehauf* to refer to W.Va.Code, 38–11–1, *et seq.*:

> "*W.Va.Code* 1931, 38–11–1 *et seq.* significantly broadens the common-law possessory lien and plainly demonstrates the Legislature's intent to supplant particular common-law liens with a series of statutory liens of similar, but expanded, character."

■ In *Fruehauf*, we also found that W.Va.Code, 38–11–2 (1931), provides specific language subjecting the liens created in this article "to other titles, interests, liens, or charges[.]"[4] Thus, we concluded that the

statutory liens created in W.Va.Code, 38–11–3, were subject to the prior security lien of Fruehauf, as reflected in Syllabus Point 6:

> "*W.Va.Code* 1931, 38–11–2 and 3, read in *pari materia*, is a lien-creating statute which expressly subordinates the priority of an improver's lien created thereby to that of a prior perfected security interest and other prior liens of which the improver had actual or constructive notice."

Consequently, under *Fruehauf*, we find the circuit court was correct in holding that the Bank had the first lien.

## II.

■ The new issue raised here that was not addressed in *Fruehauf* is Patriot Ford's assertion that the Bank's security agreement required the owner to keep the vehicle in good condition. This assertion arises from language contained in paragraph 3 of the security agreement.[5] Under W.Va.Code, 38–11–3, the statutory lien may extend "to any other person by whose authority or with whose consent the property was deposited."[6]

---

"A person who, while in possession thereof, makes, alters, repairs, stores, transports, or in any way enhances the value of an article of personal property ... shall have a lien upon such article ... while lawfully in the possession thereof, for the charges agreed upon, or, if no charges be agreed upon, then for his just and reasonable charges for the work done ..., and may retain possession thereof until such charges are paid. Such lien shall be good against the person who deposited the property with the lienor, and against any other person by whose authority or with whose consent the property was deposited."

This section was amended in 1981 to provide a reference to W.Va.Code, 38–11–14.

3. W.Va.Code, 38–14–1, *et seq.*, referred to factors' liens. This article was repealed in 1963 when the UCC containing related provisions was adopted. *See* Official Comment, W.Va.Code, 46–9–101 (1963).

4. W.Va.Code, 38–11–2, reads as follows:

"Any lienor shall take such rights as a purchaser of the property deposited with him would take, and shall take subject to other titles, interests, liens, or charges in the same manner that a purchaser would take. The lienor's rights shall be determined as of the time when the property was deposited with him, except that if such lienor shall receive actual notice of such other liens or charges after he has received possession of the proper-

ty, any further charges incurred by him after such notice, except such as shall be necessary for the storage or preservation of the property while holding such property for charges incurred before such notice, shall be subordinate to such other liens or charges of which he had actual notice."

5. Paragraph 3 of the 1990 security agreement provides:

"**Agreements Respecting Collateral:** The Collateral (a) shall remain free of all liens and security interests (except for the security interest granted herein), (b) is on the date hereof and shall be kept in good condition at all times, (c) will not be sold, leased or otherwise transferred by contract or by operation of law without the written consent of Bank, (d) will not be altered, repaired, stored, transported or enhanced in value without the written consent of Bank, (e) will not be used for hire or in violation of any law, (f) may be inspected by Bank at any time wherever located, (g) will not be permitted to remain outside the state or the location of the Collateral as herein stated for a period of thirty days or more without the written consent of Bank, (h) will not be used in racing contests of any nature, and (i) shall be and remain personal property no matter how affixed to real property."

6. For the full text of W.Va.Code, 38–11–3, see note 2, *supra*.

Thus, it is argued that the Bank by requiring the vehicle to be kept in good condition consented to the repairs, and, therefore, Patriot Ford's liens extend to it.

We are cited several of our earlier cases that dealt with the common law repairman's lien. *E.g., Scott v. Mercer Garage & Auto Sales Co.,* 88 W.Va. 92, 106 S.E. 425 (1921); *Commercial Credit Co. v. Oakley,* 103 W.Va. 270, 137 S.E. 13 (1927). Both of these cases concluded that a repairman's lien did not prevail over a prior lien. *Commercial Credit* relied on the Syllabus of *Scott,* which states:

"The common-law lien of a mechanic for repairs on a chattel in his possession is subordinate to the lien of a former owner of the chattel who in his contract of sale reserved the title as security for unpaid purchase money, duly recorded as provided by section 3 of chapter 74 (sec. 3831) of the Code, unless by the terms of the contract or by the subsequent conduct of the seller he has given express or implied authority to the vendee to keep the property in repair."

It is the language in the latter portion of this Syllabus that Patriot Ford relies on to claim that the Bank's security agreement requiring the buyer to keep the vehicle in good condition implies a consent to repair and gives its liens priority. In both *Scott* and *Commercial Credit,* there was no language in the security agreement about a duty to keep the vehicle in good repair. Nor did this Court discuss any law on this issue in its opinions.

The security agreement in this case did not contain language that required the vehicle only to be kept in good condition. It went on in subsection 3(d) to require that the vehicle could not be "altered, repaired, stored, transported or enhanced in value without the written consent of Bank." [7] Thus, even if we were to assume that our earlier cases of *Scott* and *Commercial Credit* carried precedential value, after our adoption of the UCC, they are not controlling in this case in view of the specific language requiring the Bank's consent.

Thus, we conclude that the language in W.Va.Code, 38–11–3, which extends the liens created in this section to "any other person by whose authority or with whose consent the property was deposited," does not extend to a person or entity having a prior recorded security agreement on the property which requires written consent to effect any improvements on or storage of the property, where such written consent has not been obtained.

Therefore, the judgment of the Circuit Court of Raleigh County is affirmed.

Affirmed.

7. See note 5 for the full text of paragraph 3 of the security agreement.