647 S.E.2d 861

**GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff Below, Appellant**

v.

**D.C. WRECKER SERVICE and Kenneth Cox, Defendants Below, Appellees.**

No. 33192.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 13, 2007.

Decided May 25, 2007.

Andrea K. Reynolds, Esq., Mapother & Mapother, Huntington, for Appellant.

Gregory K. Smith, Esq., Williamson, for Appellees.

STARCHER, J.:

This is an appeal by General Motors Acceptance Corporation (hereinafter "GMAC") from a final judgment of the Circuit Court of Mingo County. The issues before the trial court were, *inter alia*, (1) the priority of a prior perfected security interest in a 2002 GMC K1500 pickup truck financed by GMAC, (2) the validity of an improver's lien claimed by the appellees, D.C. Wrecker Services and Kenneth Cox (hereinafter "D.C. Wrecker" or "Cox") for towing and storage of the vehicle following an accident, and (3) whether GMAC was entitled to damages for depreciation of the vehicle.

## I.

### Facts & Background

On August 12, 2002, Randy Moore (hereinafter "Moore"), purchased a 2002 GMC K1500 pickup truck (hereinafter "the vehicle"). To make his purchase, Moore obtained commercial financing, using the financed vehicle as collateral, and executed a retail installment contract. The retail installment contract was subsequently assigned to GMAC. In addition to other terms and conditions, the retail installment contract required Moore to make monthly payments and specified that a failure to make the required payments would result in the agreement going into default. In the event of a default, GMAC could exercise its rights to recover the collateral.

On May 10, 2003, Moore was involved in a collision with another vehicle on County Route 9, near Red Jacket, Mingo County, West Virginia. At the time of the accident, the passengers in Moore's vehicle included his girlfriend, Linda Tackett (hereinafter "Tackett") and Moore's two children. Moore's vehicle and the vehicle of the other driver were disabled as a result of the collision. To assist in clearing the accident scene, D.C. Wrecker and Cox were called by an emergency responder. At trial of this matter in the circuit court, both Moore and Tackett testified that Moore's residence was located within 500 feet of the accident scene, and that Cox was asked to tow Moore's disabled vehicle to Moore's residence. Cox refused, stating that "for insurance purposes" and so "the insurance will pay me [Cox] faster," Moore's vehicle had to be towed to Cox's impound lot.

Approximately one week following the accident, Moore went to see Cox about the vehicle. Cox was not available, so Moore left a message asking that Cox contact him. Cox did not call. Approximately two weeks later, Moore's aunt did reach Cox, and she asked about retrieving the vehicle. Cox informed Moore's aunt that the vehicle would not be released until the towing and storage fees were paid, and that the bill was around $4,000.00—$5,000.00. Moore did not pay the amount demanded by Cox, and the vehicle remained on Cox's impound lot until it was subsequently removed from the lot and "stored" at Cox's personal residence.

In July 2003, Moore informed GMAC that the vehicle had been in an accident, that he was having insurance issues regarding whether there was insurance coverage, and that the vehicle was being kept by Cox. Moore further advised GMAC that a lawsuit was being planned against Moore's insurer.

From May 2003, while Moore's vehicle was in the possession of D.C. Wrecker and Cox, Moore continued to make monthly payments to GMAC. Moore continued to make his payments until December 2003, when he stopped, causing his loan to go into default. GMAC made several efforts to have Moore cure the default, but Moore did not. On January 20, 2004, GMAC requested that a representative inspect the vehicle. An adjuster, on behalf of GMAC, went to Cox's property and inspected the vehicle on February 4, 2004.

As a result of Moore's default, and in the same approximate time frame as GMAC's inspection of the vehicle, GMAC requested that Cox release the vehicle to GMAC. Cox informed GMAC that he would not release the vehicle until the fees for towing and storage were paid, and that the bill was $5,000.00. GMAC refused, stating the requested fees were unreasonable. GMAC tried to negotiate with Cox, but Cox insisted on payment of $5,000.00. However, Cox later left a voice mail in March 2004 to a GMAC representative indicating that Cox would accept $3,900.00.[1]

GMAC refused to pay the quoted amount, asserting that the amount was still excessive and unreasonable. GMAC contended that its prior perfected security interest required Cox and D.C. Wrecker to release the vehicle. GMAC also took the position that it was not responsible for satisfying the "improver's lien"[2] claimed by Cox, and to the extent that any liability existed, the lien could be for no more than the $1,500.00 amount specified in W.Va.Code, 33–11–3 (2001).[3] Cox and D.C. Wrecker continued to insist on payment before the vehicle would be released to GMAC.

Negotiations failed and GMAC filed suit in the Circuit Court of Mingo County for declaratory judgment and replevin.[4] Cox and D.C. Wrecker answered and filed a counterclaim against GMAC, seeking compensatory and punitive damages. In an effort to try and bring the parties together and resolve the issues amicably, the trial court referred the dispute between GMAC and Cox and D.C. Wrecker for pre-trial mediation. Following mediation, Cox released the vehicle to GMAC on July 22, 2005,[5] leaving for trial the damage issues.

On October 18, 2005, a single day bench trial was held on the damage issues. Four witnesses testified—Cox, a representative of GMAC, Moore, and Tackett. On February 15, 2006, the trial court entered judgment for Cox and D.C. Wrecker, finding that a cause of action existed under W.Va.Code, 38–11–3 (2001), and awarded Cox and D.C. Wrecker compensatory damages in the amount of $1,500.00. The court also awarded punitive damages in the amount of $4,500.00, finding that punitive damages were warranted because GMAC had engaged in "dilatory" and "reprehensible" conduct. The trial court also found that Cox and D.C. Wrecker were not liable to GMAC for depreciation of the vehicle while it was in storage, but were liable for $200.00 in damage to the vehicle caused by a broken window. The compensatory damage

---

1. The March 2004 voice mail was apparently preserved and was testified to by Cox at trial. However, a copy of the voice mail, or a transcript of the message, was not introduced into evidence at trial.

2. W.Va.Code, 38–11–3 (2001) provides, in part, that under certain circumstances, and with certain provisos and limitations, a person who "makes, alters, repairs, stores, transports or in any way enhances the value of an article of personal property, or boards, pastures, feeds, trains, improves or transports any animal shall have a lien upon such article or animal while lawfully in the possession thereof. . . ."

3. W.Va.Code, 38–11–3 (2001) reads, in relevant part, as follows:
   Provided, That, notwithstanding the provisions of this section and section two [§ 38–11–2] of this article, if a person possessing an improver's lien on a motor vehicle releases that vehicle to a secured party taking possession after default, the secured party shall, upon redemption of the vehicle by the debtor or resale or other disposition by the secured party, pay to the improver *the lesser of:* (i) The actual cost of improvements as measured by the cost of inventory and labor; *or (ii) fifteen hundred dollars . . . .*
   (Emphasis added.)

4. The action of "replevin" was abolished by the legislature in 1923. W.Va.Code, 55–7–4 (1923).

5. The vehicle had been in Cox's possession for a total of 569 days.

award to Cox and D.C. Wrecker was offset by the $200.00 for the broken window.

## II.

### Standard of Review

■ This Court has consistently held that in "reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus Point 1, *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996). We have further held that a "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995), citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948).

## III.

### Discussion

In the instant case, the circuit court found that, pursuant to *W.Va.Code*, 38–11–3 (2001), Cox and D.C. Wrecker held a valid improver's lien on Moore's vehicle, because Moore had consented to his vehicle being towed and stored by Cox and D.C. Wrecker, and because the vehicle had been in D.C. Wrecker and Cox's possession following the accident for a total of 569 days.

■ However, the evidence adduced at trial in this action refuted that a valid contractual relationship was formed between Cox and D.C. Wrecker and Moore. Moore requested that Cox tow his disabled vehicle a short distance—less than 500 feet—to

Moore's residence. Cox refused, saying for "insurance purposes" he had to tow Moore's vehicle to his impound lot. The appellees cite no authority imposing such a duty on Cox.[6] Moore did not "consent" to Cox's towing the vehicle to Cox's impound lot. In fact, it appears that Cox deceived Moore into believing that Moore had no choice but to permit the vehicle to be towed to Cox's impound lot. Had Cox towed the vehicle, *as requested*, to Moore's residence, Cox and D.C. Wrecker would have been entitled to a reasonable fee for towing, but obviously not for storage.

■ While *W.Va.Code*, 38–11–3 (2001), does provide for an improver's lien against motor vehicles that have been towed and stored, this statute does so only in circumstances where voluntary consent, express or implied, has been given to tow and store a motor vehicle. Consent obtained by fraud, deceit, or other improper or unconscionable means is not voluntary and therefore will not form the basis for an improver's lien under *W.Va.Code*, 38–11–3 (2001).

■ In addition to voluntary consent as a condition precedent to a valid improver's lien, we also consider the reasonableness of the fee demanded. *W.Va.Code*, 38–11–3 (2001) provides that Cox and D.C. Wrecker would have been entitled to " ... the charges agreed upon, or, if no charges be agreed upon, then for his just and reasonable charges for the ... storage or transportation furnished, ... and may retain possession thereof until such charges are paid." The record is clear that Moore, Cox and D.C. Wrecker did not agree upon a "charge" for the tow and storage of Moore's vehicle. The issue of what was a "reasonable fee" was left to the trial court, and the trial court found that a "reasonable fee" for storage of Moore's vehicle was $10.00 per day. None of the parties have challenged this finding on appeal and we therefore accept the trial court's finding on what constituted a reasonable fee.

---

6. Under some factual situations, e.g., where a vehicle is evidence in a criminal investigation or an accident involving death or serious bodily injury, such a duty as claimed by Cox may exist.

However, the decision to impound would not be an arbitrary decision made by Cox, but rather a decision made by law enforcement or other authorities.

■ In the majority of cases, it is likely that a party will consent to having a vehicle towed and stored at a wrecker services lot, and an improver's lien thereby created for either agreed upon fees or reasonable fees in the absence of an agreement. In the present case, Moore did not consent to having his vehicle towed and stored on Cox's lot. However, assuming, *arguendo*, that Moore had consented to having Cox tow and store Moore's vehicle, thereby creating a valid improver's lien for "reasonable" storage fees on Cox's behalf, the trial court nonetheless erred when it found that the improver's lien extended beyond the date when Moore first sought to retrieve his vehicle.

As discussed, *supra*, Moore attempted to obtain release of the vehicle within the first week of the accident, but could not locate Cox, nor did Cox contact Moore as requested. Approximately two weeks later, Moore's aunt contacted Cox, asked Cox about getting Moore's vehicle, and was told by Cox that the towing and storage fee needed to paid before he would release the vehicle. The storage fee quoted by Cox to Moore's aunt was $5,000.000, a fee we find unreasonable.

In considering whether an improver's lien had been created on behalf of Cox and D.C. Wrecker, the trial court should have considered not only whether Moore had consented to having Cox tow and store Moore's vehicle, but whether the $5,000.00 fee demanded by Cox three weeks following the accident placed Moore in a situation where it was not possible for him to pay and thereby secure release of Moore's vehicle. The trial court should also have considered whether Moore had a duty to pay the unreasonable amount demanded by Cox, and whether the unreasonableness of Cox's demand equitably relieved Moore of any further liability to Cox and D.C. Wrecker.

Factors that the trial court should have considered included the testimony that Moore continued making his loan payments to GMAC for several months following the accident, even though his vehicle was in storage. This evidence of Moore's financial responsibility leads us to conclude that had Moore been quoted a *reasonable* fee by Cox, when Moore first sought to obtain release of his vehicle, Moore likely would have paid the same. The trial court found a "reasonable fee" for storage in this case was $10.00 per day. Considering when Moore's aunt spoke with Cox—approximately three weeks or twenty-one days following the accident—a "reasonable fee" would therefore have been in the area of $210.00—not the outrageous $5,000.00 fee demanded by Cox.

■ Thus, even had Moore "consented" to having Cox tow and store his vehicle, Cox's demand less than three weeks later for $5,000.00 for the towing and storage was unreasonable and, therefore, principles of equity and unclean hands barred Cox from asserting the improver's lien that Cox may otherwise have been entitled to under *W.Va. Code*, 38–11–3(2001). An improver's lien under *W.Va.Code*, 38–11–3 (2001), is not created for storage fees generated when an improver has demanded unreasonable fees as a precondition for release of a stored motor vehicle.

Therefore, because Moore did not voluntarily consent to have Cox and D.C. Wrecker tow Moore's vehicle to Cox's impound lot, and thereafter store the vehicle, and because the storage fee charged by Cox was unreasonable, the trial court erred in concluding that a valid improver's lien had been created pursuant to *W.Va.Code*, 38–11–3 (2001) on Cox and D.C. Wrecker's behalf and against Moore's vehicle.

■ The trial court also awarded punitive damages against GMAC. We have held that to "sustain a claim for punitive damages the wrongful act must have been done maliciously, wantonly, mischievously or with criminal indifference to civil obligations. A wrongful act done under a *bona fide* claim of right and without malice in any form constitutes no basis for such damages." Syllabus Point 3, *Jopling v. Bluefield Water Works & Improvement Co.*, 70 W.Va. 670, 74 S.E. 943 (1912).

■ In the present case, there is no evidence that would warrant the award of punitive damages. Prior to Moore's default on his loan with GMAC, GMAC had no right to take possession of the vehicle, nor the right to "consent" to Cox storing the vehicle. The vehicle belonged to Moore, and it was

Moore's choice and right to decide where it was parked, or stored, or where it was serviced. It was only *after* Moore's default that GMAC had a right to possession and the right to consent to storage. GMAC was not, therefore, dilatory in exercising its rights as found by the trial court.

■ Furthermore, GMAC never gave its consent, express or implied, for Cox to store Moore's vehicle. Following Moore's default, and the lapse of the period for Moore to cure the default, GMAC set into motion efforts to secure its collateral. Moore testified at trial that GMAC tried to repossess the vehicle, but that Cox had moved the vehicle from his business lot and "stored" the vehicle at his personal residence. When GMAC requested release of the vehicle, Cox quoted the same $5,000.00 fee that he had quoted to Moore's aunt approximately three weeks following the accident. This fee was unreasonable, as discussed *supra;* for this reason, and because the fee for storage of Moore's vehicle was based on a deceitful act, there was no improver's lien created under *W.Va.Code,* 38–11–3 (2001).

■ Nor did GMAC act "reprehensibly," as found by the trial court, when it filed suit for declaratory judgment under a *bona fide* claim of right. Cox was demanding payment of $5,000.00 as a condition precedent to Cox releasing the vehicle. GMAC believed the fee to be unreasonable, and that its prior perfected security interest trumped any improver's lien claimed by Cox. This Court has held that *W.Va.Code,* 38–11–2 and 3, read in *pari materia,* are lien-creating statutes that "expressly subordinates the priority of an improver's lien created thereby to that of a prior perfected security interest and other prior liens of which the improver had actual or constructive notice." Syllabus Point 6, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.,* 159 W.Va. 14, 217 S.E.2d 907 (1975).

■ We have also held that "the language in *W.Va.Code,* 38–11–3, which extends the liens created in this section to 'any other person by whose authority or with whose consent the property was deposited,' does not extend to a person or entity having a prior recorded security agreement on the property which requires written consent to effect any improvements on or storage of the property, where such written consent has not been obtained." Syllabus Point 3, *Bank of White Sulphur Springs v. Patriot Ford, Lincoln–Mercury, Inc.,* 191 W.Va. 339, 445 S.E.2d 522 (1994). The operative language in *Bank of White Sulphur Springs* is that an improver's lien *will not extend* to an entity having a prior recorded security agreement on the subject property, *unless* that entity's written consent to the improvement was first obtained where such consent is required by the security agreement. There is no dispute that GMAC did not give its written consent to Cox or D.C. Wrecker to store the vehicle.

GMAC was therefore exercising a *bona fide* claim of right to seek a declaratory judgment from the circuit court as to its rights and liabilities when Cox and D.C. Wrecker refused to release the vehicle unless GMAC paid the amount demanded by Cox. GMAC also had a *bona fide* claim of right to seek the return of the Moore vehicle, albeit by a cause of action other than replevin which has been abolished, when Moore defaulted and where the vehicle was being detained by Cox under demand for payment of $5,000.00. GMAC was not required to satisfy Cox's claimed improver's lien, because GMAC had not given its written consent to store the Moore vehicle, *Bank of White Sulphur Springs, supra,* and GMAC was entitled to its possession of its collateral. Therefore, GMAC's suit was not evidence of "reprehensible conduct," but rather an action based on a *bona fide* claim of right. The trial court erred in finding that an award of punitive damages was appropriate in this case. *Jopling, supra.*

■ Finally, GMAC sought damages resulting from depreciation of the vehicle as a result of Cox and D.C. Wrecker maintaining possession of the vehicle for an unreasonable period of time—569 days. The trial court found that GMAC was not entitled to damages for depreciation because the extended storage of Moore's vehicle on Cox's impound lot was the result of GMAC's "dilatory" conduct. We believe otherwise. The trial court erred in finding that GMAC was not entitled

to damages for depreciation of the value of the vehicle while in storage; we believe that the record in this case clearly supports the appellant's right to damages on this claim.

## IV.

### Conclusion

For the reasons set forth herein, the judgment of the circuit court is reversed and this case remanded. On remand, the trial court shall enter judgment finding in favor of GMAC on the counterclaim filed by Cox and D.C. Wrecker. This matter is also remanded for proceedings consistent with this opinion on GMAC's complaint for damages based on depreciation of the vehicle for the unreasonable period of time that the vehicle was in Cox's and D.C. Wrecker's possession.

Reversed and Remanded.